FRANK M. SIMONTON, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, BY ITS ATTORNEY-GENERAL, *ex rel.* SOLON B. TURMAN, DEFENDANT IN ERROR.

1. Where the Attorney-General in behalf of the State, under sections 1781 et seq. Revised Statutes, institutes proceedings in his own name by information in the nature of quo warranto for the double purpose of ousting a respondent from a public office and having it judicially declared that a person claiming title to the office named therein is rightfully entitled to such office, the person so claiming the office named therein is not required to give a bond or other security for costs.

2. An information by the Attorney-General in behalf of the State alleging that respondent uses, enjoys, exercises and performs the functions of a public office without warrant or authority of law, and charges usurpation of such office by respondent, is sufficient to require the respondent to show by what right or authority he exercises or performs the functions of such office as against the State.

3. An information by the Attorney-General in behalf of the State alleging that respondent uses, enjoys, exercises and performs the functions of a public office without warrant or authority of law, charging usurpation of the office by the respondent, and alleging that another person claiming the office named therein is rightfully entitled to the office, and praying that process issue requiring respondent to answer by what warrant or authority he claims to use, enjoy, exercise and perform the functions, franchise and power of the office, and that the person claiming the office named therein be adjudged to be rightfully entitled thereto, is good as against a demurrer to the entire information, even though the allegations with reference to the title of the person named therein as claiming the office are insufficient to show his right to the office.

19 S. C.

4. Under section 1078, Revised Statutes, where the judge of a Circuit Court is disqualified in a case pending in his Circuit, it is made the duty of the judge of any other circuit, upon application of a party to such cause, to perform any duty or hear and determine any matter therein which it would be the duty of the judge of the court in which such cause is pending to perform, or to hear and determine in vacation or between terms, but for his disqualification. In performing the duty required by this statute the judge to whom application is made acts in the place and stead of the disqualified judge, not for the purpose of hearing and deciding every matter arising in the cause, but only in respect to the particular matter submitted to him, and therefore other matters arising for decision in the same cause, proper to be heard and determined in vacation or between terms, may be submitted to and heard and determined by the judge of any other circuit under the statute.

5. Section 1078, Revised Statutes, does not contravene the provisions of Section 12, Article V, nor Section 19, Article V, Constitution of 1885.

6. Under Section 1078, Revised Statutes, the judge of another circuit, upon application of a party to a cause pending in one circuit in which the judge of the circuit is disqualified, may not only hear and determine a demurrer to pleas in such cause, but may enter final judgment upon sustaining such demurrer, where the party does not desire to amend or plead over, and where such final judgment is one that can legally be entered in vacation or between terms.

7. Where a vacancy in the office of prosecuting attorney for a Criminal Court of Record occurs during a session of the legislature, by reason of the resignation of an incumbent regularly appointed for four years, the successor to fill such vacancy is properly appointed by the Governor and confirmed by the Senate for the unexpired term of the incumbent whose resignation caused such vacancy, and not for four years.

Writ of Error to the Circuit Court for Hillsborough county.

### STATEMENT.

On June 6th, 1901, there was filed in the Circuit Court of Hillsborough county a motion for leave to file an information therewith presented, each purporting to be signed by W. B. Lamar, Attorney-General of the State. The information was substantially as follows: In the Circuit of the Sixth Judicial Circuit of Florida, for Hillsborough county. William B. Lamar, Attorney-General of the State of Florida, who sues for the people of said State in this behalf, comes into this court here on the sixth day of June, 1901, and for the said people and in the name and by authority thereof, at the relation of Solon B. Turman, gives the court here to understand and be informed that Frank M. Simonton, in the county of Hillsborough in said State, on April 27th, and thence continually has used, exercised and performed, and still does use, enjoy, exercise and perform, without warant or authority in violation of the constitution and laws of said State, the franchise, functions and powers of the office of Solicitor of the Criminal Court of Record for the said county, which said office and the franchise and functions and powers thereof the said Frank M. Simonton, during all the time aforesaid in the county and State aforesaid, usurped and still does usurp in derogation of the legal rights of the said Solon B. Turman and to his great damage and prejudice and to the great damage and prejudice of the people of Florida. And the said Wiliam B. Lamar, Attorney-General aforesaid, prosecuting under and by the authority aforesaid and for the people aforesaid, would further give the court to be informed and understood that the said Solon B.

Turman, the relator, was appointed by the Governor and and confirmed by the Senate of said State at the session of the Legislature A. D. 1899, as Solicitor of the Criminal Court of Record in and for Hillsborough county, Florida; that said Turman qualified as solicitor for the court aforesaid, reference being made to a copy of his oath of office filed with the Secretary of State, attached to the information marked "Exhibit A"; that on June 8, 1899, a commission was duly issued to said Turman, commissioning him solicitor of the Criminal Court of Record in and for said county of Hillsborough, reference being made to a copy of the commission attached to the information marked 'Exhibit B;" that said Turman entered upon the duties of said office on the date aforesaid, to-wit: June 8th 1899, and held and executed the duties and functions of said office as Solicitor aforesaid up to April 27, 1901; that said Turman is entitled to said office to hold the same and execute the duties and functions thereof for four years from the date of said commission, to-wit: June 8th, 1899. Wherefore said William B. Lamar, Attorney-General of said State, for said people and in the name and by the authority thereof, on the relation of Solon B. Turman, prays the consideration of the court in the premises, and that Solon B. Turman, the relator, be restored to the office of County Solicitor of the Criminal Court of Record, and due process of law against the said Frank M. Simonton in this behalf to be made, to answer the said people, by what warrant or authority he claims to use, enjoy, exercise and perform the functions, franchise and powers of the office aforesaid. The affidavit of Solon B. Turman was appended to this information, to the effect that the matters of fact set forth therein are true. There were also attached as exhibits copies of the acceptance and the oath of

office or relator, dated June 1st, 1899, and the commission issued to him June 8th, 1899. This commission signed by Governor Bloxham, and countersigned and sealed by Secretary of State Crawford, after reciting that "Solon B. Turman hath been duly appointed by the Governor and confirmed by the Senate, according to the constitution and laws of the State to be County Solicitor of the Criminal Court of Record in and for Hillsborough county from the eighth day of June, A. D. 1899, for the unexpired term of P. O. Knight, resigned, which term will expire on April 27th, A. D. 1901," declares that the Governor does thereby "commission the said Solon B. Turman to be such County Solicitor according to the constitution and laws of said state for the term aforesaid." There was also attached to the information a certificate dated June 6th, 1901, by the Hon. Jos. B. Wall, Judge of the Sixth Judicial Circuit (which embraces Hillsborough county), and a letter from the Attorney-General to Solon B. Turman, dated June 3d, 1901. Judge Wall certified "that Solon B. Turman is related to me by affinity, to-wit: he is my nephew-in-law, and that I am disqualified from hearing or deciding any cause or controversy in which he may be interested." The letter of the Attorney-General states "you are hereby authorized to bring an information in the nature of *quo warranto* in any Circuit Court of this State in my name as Attorney-General of the State of Florida against Frank M. Simonton to test his right and title to the office of Solicitor of the Criminal Court of Record for the county of Hillsborough, provided no costs in such proceedings shall accrue against the State of Florida." On June 7th, 1901, the Judge of the Fifth Judicial Circuit, made an order reciting the dis-

qualification of Judge Wall, and that the Attorney-General, upon the relation of Solon B. Turman, had moved the court for leave to file an information in the nature of *quo warranto* against Frank M. Simonton, Solicitor of the Criminal Court of Record for Hillsborough county, and granting leave to file such information, and a rule against said Simonton requiring him to show cause at a certain time and place why the writ of *quo warranto* prayed for in said information should not issue, and directing service of the rule and information upon said Simonton. On June 14th, 1901, the same Judge in his Circuit, made an order denying the motion of respondent Simonton for an extension of the time for filing his return to the rule to show cause, and directing that such return be made and filed on June 25th, 1901, at Tampa, in said county of Hillsborough, with the Clerk of the Court. The judge attaches to this order a statement that the order requiring the return to be made at Tampa is made because the condition of the business in his circuit is such that he will be unable to give the case proper attention. On June 25th, 1901, respondent Simonton filed a motion and demurrer. The motion was to quash the rule to show cause upon the following grounds: 1st. The leave of the Attorney-General to bring the suit had not been complied with. 2nd. It does not appear from the record that relator has filed any bond or security to protect the State from costs. 3d. The writ and information show on their face that the alleged term of office claimed by relator will expire before the relief sought can be granted. 4th. That the rule to show cause and all orders of the Judge of the Fifth Circuit are unconstitutional, null and void in this, that the constitution has not granted to the Circuit Courts any extra territorial jurisdiction in com-

mon law cases. 5th. The statute-under which the Judge
of the Fifth Circuit claimed the right to permit the in-
formation to be filed, and to make the orderes made by
mih, is unconstitutional, in that it attempts to confer
upon the Circuit Courts extra territorial jurisdiction.
The demurrer was to the entire information, and the mat-
ters of law noted thereon for argument are as follows:
1st. The information shows no cause of action against re-
spondent. 2nd. The allegations of the information do
not authorize the granting of the relief sought or any
relief whatever against respondent. 3rd. Relator has a
good and sufficient remedy at law against respondent.
4th. Relator has a good and sufficient remedy at law
in action to recover the alleged damages he may sustain
by reason of his alleged claim to the office in question.
5th. No facts are alleged in the information or rule to
show cause, authorizing or requiring respondent to plead
thereto. 6. There is a variance between the information and
the term of office of relator as shown by his commission
attached as an exhibit. 7th. It does not appear from the
information that relator has any such interest in the pro-
ceedings as to authorize him to become relator in  said
cause.

On July 26. 1901. the Judge of the Seventh Circuit,
in his Circuit, acting *"pro hac vice,"* made an order
denying the motion to quash, overruling the demurrer to
the information and granting leave to respondent to plead
within twenty days.

On August 14th, 1901, respondent filed four  pleas, in
substance as follows: 1st. That relator was  never  au-
thorized by the Attorney-General to bring  information
in the nature of a *quo warranto* in the Circuit Court  of
Hillsborough county in the name of such Attorney-Gen-

eral against respondent, wherefore respontent prays judgment of the information and that same be quashed. 2nd. That on or about April 27th, 1901, the office of County Solicitor of the Criminal Court of Record for Hillsborough county was vacant and there was no incumbent in the office; that on or about April 16th, 1901, Governor Jennings appointed respondent County Solicitor of said Criminal Court of Record for four years from April 27, 1901, which appointment was confirmed by the Senate on or about the same day; that on April 16, 1901, respondent took the oath of office required by the constitution and laws, filed same with the Secretary of State and accepted the office; that on or about April 27, 1901, Governor Jennings commissioned respondent to be County Solicitor of the said Criminal Court of Record for four years from April 27, 1901, and by that warrant respondent had held and executed the duties and functions of the said office all the time in the information mentioned and still holds said office and executes its duties as he has a right to do. Copies of the oath of office and commission mentioned in this plea were attached to the pleas as Exhibits A and B, and the exhibits were specially referred to in this plea. 3rd. That on or about April 27th, 1897, Governor Bloxham appointed Peter O. Knight, according to the constitution and laws of Florida, to be County Solicitor of the Criminal Court of Record for Hillsborough county for four years from April 27th, 1897; that while the Senate was in session in the year 1899, said Peter O. Knight resigned said office, and there being no method prescribed by the constitution or laws of the State for filling an unexpired term in said office while the Senate was in session, Governor Bloxham, under and by virtue of Section 7, Article I Vof the constitu-

tion, appointed relator "to be County Solicitor of the Criminal Court of Record in and for Hillsborough county, Florida, from the eighth day of June, A. D. 1899, for the unexpired term of Peter O. Knight, resigned, which term will expire on April 27th, A. D. 1901;" that Governor Jennings appointed respondent as County Solicitor of the Criminal Court of Record in and for Hillsborough county, Florida, and he was confirmed by the Senate; that respondent took the oath of office, filed same with the Secretary of State and accepted said office, as will more fully appear from a copy of the oath of office and acceptance attached to the pleas, marked Exhibit A; that on or about April 27, 1901, a commission was duly issued by the Governor, commissioning respondent to be County Solicitor of said court for four years from April 27th, 1901, as will more fully appear from a copy of the commission attached to the pleas and marked Exhibit B: that respondent entered upon the duties of the said office about April 29th, 1901, and by that warrant still performs and executes the duties thereof. A copy of the commission mentioned in this plea as having been issued to Peter O. Knight was attached to the pleas as Exhibit C, and this exhibit was also specially referred to in this plea. 4th. That on or about April 16th, A. D. 1901, respondent was appointed by the Governor and confirmed by the Senate to the office of County Solicitor of the Criminal Court of Record of said Hillsborough county, and that on or about April 16, 1901, he took the oath of office required by the constitution and laws of Florida, as will more fully appear by reference to a copy of the said oath and acceptance attached to the pleas marked Exhibit A; that on or about April 27th, 1901, said office of County Solicitor was vacant and there was no in-

cumbent therein, and that the Governor on or about April 27th, 1901, duly issued to respondent a commission, commissioning him to be County Solicitor of the said Criminal Court for four years from the twenty-seventh day of April, A. D. 1901, as will more fully appear by reference to a copy of said commission attached to the pleas marked Exhibit B, and by that warrant respondent still holds and executes the duties and functions of said office.

Exhibit A attached to the pleas purports to be an oath of office of County Solicitor of the Criminal Court of Record of Hillsborough county in the form prescribed by the constitution, by Frank M. Simonton, dated April 16, 1901, and a communication from said Simonton to the Secretary of State transmitting said oath and accepting the office mentioned therein. Exhibit B purports to be a copy of a commission issued to Frank M. Simonton signed by Governor Jennings and sealed and countersigned by Secretary of State Crawford, dated April 27, 1901, reciting that said Simonton had been duly appointed by the Governor and confirmed by the Senate, according to the constitution and laws of the State, to be County Solicitor of the Criminal Court of Record in and for Hillsborough county, for four years from April 27th, A. D. 1901, and declaring that the Governor does thereby commission the said Frank M. Simonton to be such County Colicitor of the Criminal Court according to the constitution and laws of the State of Florida, "for the term aforesaid." Exhibit C purports to be a copy of a commission issued to Peter O. Knight, signed by Governor Bloxham and sealed and countersigned by Secretary of State, Crawford, dated April 27, 1897, reciting that said Knight hath been duly appointed by the Governor

and confirmed by the Senate, according to the constitution and laws of the State, to be County Solicitor of the Criminal Court of Record in and for Hillsborough county, for four years from the twenty-seventh day of April, A. D. 1897, and declaring that the Governor does thereby commission the said Peter O. Knight to be such County Solicitor of the Criminal Court of Record, according to the constitution and laws of said State, "for the term aforesaid."

On August 14th, 1901, a demurrer was interposed to these pleas, purporting to be signed by the Attorney-General and also by attorneys for Turman, the relator. The matters of law noted for argument are substantially as follows: 1st. The pleas do not controvert any material fact alleged in the information showing that Solon B. Turman is entitled to hold, exercise and discharge the functions of the office of County Solicitor. 2nd. The pleas do not controvert any material fact alleged in the information showing that the office of County Solicitor is unlawfully held and usurped by respondent. 3rd. The pleas do not set forth facts sufficient in law to warrant respondent in holding, discharging or exercising the functions of the office of County Solicitor. 4th. The pleas do not set forth any facts showing that the office of County Solicitor was vacant at the time respondent claims to have been commissioned to hold said office. 5th. The pleas seek to justify the respondent in holding, exercising and discharging the functions of the office of County Solicitor on the conclusion of law therein set forth, which is unwarranted by any facts therein contained.

On August 15, 1901, a paper purporting to be signed by the Attorney-General, and also by the attorneys for

relator Turman, was served upon  respondent,  notifying
him that the demurrer to pleas had been set down  for
hearing before the Judge of the Second Judicial Circuit
on August 21, 1901, and that at said time the demurrer
would be argued and that a judgment of ouster  thereon
would be asked.

On August 21, 1901, respondent was granted leave  to
file two additional uleas, and by consent of parties the
Judge of the Second Circuit, in his Circuit, made an or-
der that the demurrer previously filed to pleas apply also
to the two additional  pleas.  These  additional  pleas,
which are numbered 5 and 6, are substantially as follows :
5th. That on or about April 10, ——, the Criminal Court
of Record for Hillsborough county was established by
legislative act, Chapter 4223 of the laws of Florida,  in
accordance with the constitution of the State, and, among
other things, said legislation prescribed that "there shall
be a prosecuting attorney for said court to be designated
the County Solicitor; such prosecuting attorney shall be
appointed by the Governor and confirmed by the  Senate.
The term of office shall be four years;" that  thereupon,
while the Senate continued in session, the Governor  ap-
pointed Peter O. Knight to be the prosecuting attorney
for said court under the designation of County Solicitor
of the Criminal Court of Record in and for Hillsborough
county for the term of four years from the twenty-sev-
enth day of April, A. D. 1893, and thereupon the Senate
being in session, confirmed said appointment for  said
term, and thereupon on or about April 27,  1893,  said
Knight accepted said office, took the oath of office in ac-
cordance with the constitution and laws, and thereupon
on the twenty-seventh day of April, 1893, the Governor
issued the commission for said office to said  Knight for

the term of four years from said date; that thereupon on said day Knight, being duly qualified and commissioned, entered upon and executed the duties and functions of said office; that upon the expiration of said term of four years, on or about April 27, 1897, the Governor appointed said Knight to be prosecuting attorney for said court, under the designation aforesaid, for the term of four years from April 27, 1897; that thereupon the Senate, being in session, confirmed the said appointment of Knight for the term aforesaid, and thereupon on or about said day said Knight accepted said office, took the oath of office in accordance with the constitution and laws, and thereupon on April 27, 1897, the Governor of the State issued the commission for said office to said Knight for the term of four years from said date, and thereupon, on said last named day, said Knight, being duly qualified and commissioned, entered upon and executed the duties and functions of said office; that upon the expiration of said term of four years the Governor on or about April 27, 1901, appointed the respondent to be prosecuting attorney for said court, under the designation aforesaid, for the term of your years from April 27, 1901, and thereupon the Senate, being in session, confirmed said appointment of respondent for the term aforesaid, and thereupon, on or about the twenty-seventh day of April, 1901, respondent accepted said office and took the oath of office in accordance with the constitution and laws of said State, and thereupon, on the twenty-seventh of April, 1901, the Governor issued the commission for said office to respondent for the term of four years from said date, April 27, 1901, and thereupon, on said last named day respondent, being duly qualified and commissioned, entered upon and executed the duties and functions of said office, and ever

since said day respondent has held the office and continues to execute the duties and functions thereof, and this respondent was on the day of his appointment, and has continued ever since to be, and is now, duly qualified under the constitution and laws of the State to receive and hold said office. 6th. The sixth plea was substantially identical with the fifth, except that it contained additional allegations to the effect that upon the expiration of the two terms of office for which Peter O. Knight was alleged to have been commissioned, *viz* the term expiring four years from April 27th, 1893, and the term expiring four years from April 27th, 1897, and by reason of such expiration of terms, the said office became vacant and there was no incumbent to fill the same.

On August 24th, 1901, the cause was brought on for hearing before the Judge of the Second Circuit, in his Circuit, and upon such hearing the judge rendered judgment sustaining the demurrer to the pleas, adjudging that relator Solon B. Turman upon proof presented was the lawfully appointed and duly qualified Solicitor of the Criminal Court of Record of Hillsborough county, and entitled to use, hold, and exercise the said office, perform the duties thereof and to receive its emoluments for four years commencing with the eighth day of June, A. D. 1899; that respondent is guilty of usurping, holding and executing the same, performing the duties and receiving the emoluments thereof unlawfully, and that respondent be excluded from said office, and from exercising any of the duties pertaining thereto, and that he do forthwith yield and deliver up to relator said office. From this judgment this writ of error was taken, and the assignment of errors complains that the court erred in the following particulars, among others: 1st. Denying respond-

ent's motion to quash the rule. 2nd. Overruling respondent's demurrer to the information. 3rd. Sustaining the demurrer to respondent's pleas. 4th. Entering the final judgment and each several provision thereof. 5th. It is also contended by the assignment of errors that the Judge of the Second Circuit did not have jurisdiction to render the final judgment.

*Barron Fhillips, Geo. G. Clough* and *A. W. Cockrell & Son,* for Plaintiff in Error.

*Hugh C. Macfarlane* and *John P. Wall,* for Defendant in Error.

CARTER, J. *(after stating the facts.)*

I. The third ground of the motion to quash has not been argued, and will, therefore, be treated as abandoned. The fourth and fifth grounds will be considered in connection with the assignment of error questioning the jurisdiction of the Judge of the Second Circuit to render the final judgment. The first and second grounds proceed upon the theory that the information was brought by the relator in pursuance of leave granted him by the Attorney-General, and that it was necessary that relator should file a bond or security to protect the State for liability for costs. It is true a letter from the Attorney-General was attached to the information authorizing Solon B. Turman to bring an information in the nature of *quo warranto* in the name of the Attorney-General to test the right and title of responent to the office of Solicitor of the Criminal Court of Record of Hillsborough county, but the motion to file the information and the information itself purport to be brought by the Attorney-General in person,

each purports to be signed by him and neither is signed by Mr. Turman or by his attorneys. Upon the face of the proceedings they were not instituted in pursuance of the authority granted in the letter, but were instituted directly by the Attorney-General for the double purpose of ousting respondent from the office and having it judicially declared that Solon B. Turman, a person claiming title to the office, was rightfully entitled thereto. This he had a right to do under sections 1781 *et seq.* Revised Statutes. Under such circumstances the statute does not require a bond or security for costs from Mr. Turman and, therefore, the first and second grounds of the motion were properly overruled.

II. The demurrer to the information was properly overruled. It was general, addressed to the entire information, and even though the information be defective in its allegations as to the right or title of relator Solon B Turman to the office, it does allege that respondent uses, enjoys, exercises and performs the functions of the public office of Solicitor of the Criminal Court of Record of Hillsborough county without warrant or authority of law and charges usurpation of said office by him, and is, therefore, sufficient to require him to show by what right or authority he exercises or performs the functions thereof as against the State. State *ex rel.* Attorney-General v. Philips, 30 Fla. 579, 11 South. Rep. 922. The proceeding as we have seen was in behalf of the State through its Attorney-General and the rule we announce above applies to such cases. Lake v. State *ex rel.* Palmer, 18 Fla. 501. If the respondent in an information of this nature brought by the Attorney-General in behalf of the State, can ever take advantage of a defect in the allegations as to the title of another person claiming the office

whose claim is recognized and set forth in the informa-
tion he must do so in some manner other than by de-
murrer to the entire information.

III. The fourth and fifth grounds of the motion to
quash, and the assignment of error questioning the juris-
diction of the Judge of the Second Circuit to render the
final judgment will be considered together. As will be
seen by reference to the statement, the motion for leave
to file the information, together with the information
proposed to be filed with its exhibits were first filed in
the Circuit Court of Hillsborough county in the Sixth
Circuit. The Judge of that Circuit being disqualified as
appears from his certificate of record, application was
made to the Judge of the Fifth Circuit for leave to i .e
the information and for the rule to show cause, which was
granted. Subsequently the motion to quash the rule and
the demurrer to the information were heard and decided
by the Judge of the Seventh Circuit, and thereafter the
demurrer to respondents pleas was heard, and final judg-
ment upon the demurrer was rendered against respond-
ent by the Judge of the Second Circuit. The case was
never transferred from Hillsborough county, but re-
mained pending there all the while, and each judge before
whom the case was brought for hearinng undertook to act
as to the several matters submitted *pro hac vice* only, or
in other words, merely in the place and stead of the Judge
of the Sixth Circuit who was disqualified. The several
judges to whom the case was submitted for the several or-
ders mentioned derived their power to act from section
1078 Revised Statutes, which provides that "whenever the
judge of any court, other than the Supreme and Criminal
Courts of Record shall be unable from absence, sickness

20 S. C.

or other cause, or shall be disqualified from interest or
any other cause to discharge any duty whatever apper-
taining to his office which may be required to be per-
formed in vacation or between terms, it shall be the duty
of any other judge of a court of the same jurisdiction as
the court in which the cause is pending, on the applica-
tion of any party to perform such duties, and hear and
determine all such matters as may be submitted
to him and such judge may discharge such duties either
in his own or any other jurisdiction and shall be substi-
tuted in all respects in the place and stead in the matter
aforesaid of the judge unable or disqualified to act." It
is argued here that a proper construction of this statute
requires us to hold, that when application is once made
to a judge of a particular circuit to perform a duty or to
hear and determine a matter, that might have been re-
quired to be performed or heard and determined in vaca-
tion or between terms by a judge of another circuit, but
for his disqualification to act, all matters subsequently
arising for decision in that particular matter or cause
must be submitted to the same judge so long as he is qual-
ified and able to perform the duty or to hear and deter-
mine the matter to be submitted, and that such subse-
quent matters can not be submitted to the judge of a dif-
ferent circuit. A careful reading of the statute convinces
us that this construction is untenable. The language is
plain that it shall be the duty of *any* other judge of a
court of the same jurisdiction, upon application of a
party to a pending cause, to perform *any* duty or hear
and determine *any* matter therein which it would be the
duty of the judge of the circuit in which the cause is
pending to perform or to hear and determine in vacation
but for his disqualification. In performing the duty re-

quired by the statute, the judge to whom application is made, acts in the place and stead of the disqualified judge, not for the purpose of hearing and deciding every matter arising in the cause, but only in respect to the particular matter submitted to him. It is also contended that the statute is void because it confers upon Circuit Courts and Circuit Judges extraterritorial jurisdiction in violation of section 12 Article V, constitution of 1885, and because its legal effect is to transfer a cause at law upon the application of one party only, from the circuit in which such cause is pending to the circuit of the judge who is called upon to hear and determine a matter arising therein, in violation of section 19 Article V, of the same constitution as interpreted by this court in State ex rel. Hughes vs. Walker, 25 Fla. 561, 6 South. Rep. 169, In State ex rel. Florida Pub. Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614. the constitutionality of the statute in question was upheld as against the contentions now made in this cause, and we are satisfied that decision is correct. It is claimed, however, that in that case the question was simply whether the statute was constitutional in so far as it applied to the hearing and determination of a demurrer to a declaration, while in the present case the Judge of the Second Circuit proceeded to render a final judgment against respondent. It is true the two cases differ in the respect pointed out, but we think they are both controlled by the same principles. In either case there is no transfer of the cause, nor exercise of extraterritorial jurisdiction. The judgment in this case was a judgment final upon demurrer to the respondent's pleas, no leave to plead over being requested or given. It was lawful to hear and decide the demurrer to pleas in this case, and to render the proper judgment upon such demur-

rer, in vacation or between terms. The power to hear and determine a demurrer, which was affirmed in the case mentioned (State' *ex rel.* Florida Pub. Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614,) necessarily involves and includes the power to render the proper judgment upon that demurrer, in all cases where such judgment can lawfully be entered in vacation or between terms. We think the statute gave power to the several judges *pro hac vice* to hear and determine the matters submitted to them in the present case, and power to the Judge of the Second Circuit *pro hac.vice* to render final judgment against respondent, and that the statute is constitutional.

IV. Exhibit "B" attached to the information. and referred to therein is the commission under which it is alleged that relator Solon B. Turman is entitled to hold the office of County Solicitor for four years from its date, June 8th, 1899. This commission purports to have been issued in pursuance of an appointment of the Governor confirmed by the Senate, for the unexpired term of Peter O. Knight, resigned, which term according to the recitals in the commission and the allegations of some of the pleas expired April 27th, 1901. Each of the pleas of respondent, except the first, alleges that on April 27, 1901, respondent was duly appointed to said office and confirmed by the Senate, for four years from said date, and his commission reciting these facts is referred to and attached as an exhibit to some of the pleas. There is no denial in any of the pleas that the facts recited in Turman's commission are true, and in determining the propriety of the ruling on the demurrer to the pleas (except the first), we must consider as true the facts recited in Turman's commission as well as the facts alleged in the pleas and shown by the exhibits. Relator, under the demurrer to

the pleas, contends that although his appointment, con-
firmation and commission purports to be limited to the
unexpired term of Peter O. Knight, resigned, to-wit: until
April 27th, 1901, yet that under the constitution he is
entitled to hold the office for four years from the date of
his commission, *viz:* until June 8th, 1903; and, that
consequently the appointment of respondent on April 27,
1901, was void, and conferred no right to the office on
him.  To this contention we will now address ourselves.
Before quoting the provisions of the present constitution
bearing upon the subject, it may be well to refer to cer-
tain provisions in the constitution of 1868, and the con-
struction placed by this court thereon.  Section 7, Arti-
cle VI, of that constitution provided that "there shall
be seven Circuit Judges appointed by the Governor and
confirmed by the Senate who shall hold their office for
eight years."  Section 7, Article V, provided that "when
any office from any cause shall become vacant, and no
mode is provided by this constitution or by the laws of
the State for filling such vacancy, the Governor shall have
the power to fill such vacancy by granting a commission
which shall expire at the next election.  In the Executive
Communication of January 19, 1877. 16 Fla. 841, the court
in answer to the question whether under that constitution
and the laws, a Judge of the Circuit Court, appointed by
the Governor and confirmed by the Senate held his office
for eight years in a case where there had been a previous
incumbent who, while appointed for eight years, had
filled the office only for a part of that time, and whether
in such case the second incumbent, appointed and con-
firmed in conformity to constitutional authority before
the expiration of the time for which a previous incumbent
had been appointed held his office for the full time of

eight years, or for the balance of the unexpired time for which the first incumbent was to hold, said "the language of the constitution is plain and simple; 'there shall be seven Circuit Judges appointed by the Governor and confirmed by the Senate, who shall hold their office for eight years.' * * * There is nothing in this which limits the time of service of one appointee by reference to the time served by a previous one. The plain literal construction of that section is, that whenever the two acts, appointment by the Governor and confirmation by the Senate unite, the result is the party is entitled to the office and the express declaration is that he shall hold the office for eight years. Unless, therefore, there is some other provision of the constitution limiting or otherwise explaining this language it must have its usual and ordinary effect. There is nothing here establishing a term of office to exist between fixed dates of months or years, nor is there anything having the most remote reference to an unexpired term, or to a vacancy in an office as distinct from the office itself. There is no other provision of the constitution which changes or affects this section. The only general clause of the constitution referring to vacancies in office is that found in section 7, Article V, and this court has heretofore held (13 Fla. 12) that the power there granted is not a power to fill an unexpired term, but to fill a special vacancy, embraced in the period between the time at which the office is made vacant and the filling of the office by an election. This section, too, relates exclusively to vacancies in elective offices." The conclusion reached was that a Judge of a Circuit Court, appointed by the Governor and confirmed by the Senate held his office for eight full years, and that no part of a previous eight years during which another had held the office (but who had vacated it) entered into the compu-

tation of time for which the second appointee held. The office of County Solicitor was first created or recognized in this State by the constitution of 1885, but it is contended that the same construction should be applied to the language of that constitution relating to his office as was applied to the language of the constitution of 1868 relating to the office of Circuit Judge. If so, it is clear that relator, when appointed by the Governor and confirmed by the Senate in 1899, was rightfully entitled to hold the office for four years, and that the subsequent appointment of respondent in 1901, before the expiration of that period, was unauthorized and void.

The office of County Solicitor is provided for by section 27, Article V, constitution of 1885, as follows: "There shall be for each of said courts a Prosecuting Attorney who shall be appointed by the Governor and confirmed by the Senate, and who shall hold his office for four years." This language is very similar to that employed in the constitution of 1868, with reference to the Circuit Judge, and almost identical with that employed in the constitution of 1885, with reference to Circuit and Criminal Court Judges, viz: "There shall be seven Circuit Judges who shall be appointed by the Governor and confirmed by the Senate and who shall hold their office for six years" (Section 7, Article V); "there shall be one judge for each of said courts who shall be appointed by the Governor and confirmed by the Senate, who shall hold his office for four years" (Section 24 Article V), and yet we know to a certainty that this language with reference to Circuit and Criminal Court Judges was not intended to bear the same construction as similar language with reference to Circuit Judges in the constitution of 1868, because it is expressly provided by section 33 Article V,

that "when the office of any judge shall become vacant
from any cause, the successor to fill such vacancy shall
be appointed or elected only for the unexpired term of the
judge whose death, resignation, retirement or other
cause created such vacancy," thereby distinctly recogniz-
ing unexpired terms in the offices of such judges, and con-
fining their successors to fill vacancies to the unexpired
term. It must be admitted, however, that section 33 has
no reference to County Solicitors, and if there is no other
provision in the constitution limiting or explaining the
language used in section 27 with reference to such officer,
the same construction must be applied to this language
as was given to that used with rfeerence to Circuit
Judges in the constitution of 1868. Turning now to sec-
tion 7. Article IV, constitution of 1885, we find that it is
a revision of section 7, Article V, of the constitution of
1868, and the change of language is significant "When
any office, from any cause, shall become vacant, and no
mode is provided by this constitution or by the laws of
the State for filling such vacancy, the Governor shall
have the power to fill such vacancy by granting a commis-
sion for the unexpired term." As it now reads it is ap-
plicable to appointive as well as elective officers, and it
recognizes and provides for filling unexpired terms (see
State ex rel. Robert v. Murphy, 32 Fla. 138, text 164, 13
South. Rep. 705), while the original section before re-
vision applied only to elective offices, had no application
to unexpired terms, and provided only for filling a special
or limited vacancy, by providing an incumbent for that
period of time existing between the happening of the va-
cancy and the next election. State ex rel. Weeks v. Gam-
ble, 13 Fla. 9; State ex rel. Weeks v. Day, 14 Fla. 9; Ex-
ecutive Communication, 14 Fla. 277; Executive Commu-

nication, 16 Fla. 841. The original section had reference to a mere *locum tenens* for a part of a vacancy in elective offices, nothing more. The revised section deals with vacancies in office generally, its language is broad enough to include that of County Solicitor, and the vacancy recognized and provided for is the entire period beginning with the happening of the event which leaves the office without an incumbent, and ending with the expiration of the term of the former incumbent. It has no reference to filling the office for a new term of for the constitutional period, but for the *unexpired* term only, and there can be no difficulty whatever in applying it to the office of County Solicitor who holds for a fixed period, to-wit, four years even though in the section creating the office, terms of office, in contradistinction to terms of the officer, have not been prescribed in technical language. Neither Circuit nor Criminal Court Judges are in technical language declared to hold terms of office as distinguished from terms of the officer, and there would be as much reason for holding that the words "any judge" used in section 33, Article V, should not be applied to Circuit and Criminal Court Judges for this reason, but rather should be restrained to Supreme and County Judges and Justices of the Peace who are the only Judges given fixed terms of office by the constitution, as to say that the words "any office" used in section 7, Article IV, were not intended to embrace County Solicitors. Such a construction as to Circuit and Criminal Court Judges could be reached by arguing that as section 33 does not in terms purport to create terms of office for them and the language of the sections relating to them being insufficient to create terms of office, the expression "any judge" must be construed to refer to those judges for whom terms of office are ex-

pressly created, *viz:* Supreme and County Judges, and Justices of the Peace, but such a construction would be based upon narrow and technical grounds, and would be manifestly contrary to the obvious meaning of the constitution which plainly intends that successors to fill vacancies in the offices of all judges, shall hold for the balance of the time that the predecessor in office might have held under his original appointment or election. Neither section 33, Article V, nor section 7, Article IV, purport to create terms of office, but they do recognize unexpired terms in office. They each relate to vacancies in office, and to the filling of such vacancies for the unexpired term. They have no reference to the regular expiration of terms, nor to filling offices for new or full terms, but are limitations upon the power to fill the office for a new or full term upon the happening of a vacancy which power would exist in the absence of such provisions, or of other provisions creating technical terms of office. The construction given to the provisions of the former constitution in the Executive Communication before referred to is obviously correct, but it can not be doubted that the change of language in the seventh section of the Executive Article was made with special reference to unexpired terms and when this revised section is read in connection with the Executive Communication it is apparent that the change was made designedly with a view of removing the objections advanced in that communication against holding that the provision as it then stood, imported the element of an unexpired term into the office of Circuit Judge. That this change of language means something, can not be denied, but in view of the construction placed upon the original setcion in connection with offices held for a fixed time but not having technical terms of office

affixed to them, the conclusion seems irresistable that it was intended by this amendment to recognize the element of an unexpired term in all offices created by the constitution where a fixed definite period of holding was allotted to the incumbent, whether called technically terms of office or terms of the officer. That the general spirit of the constitution is to recognize this element of an unexpired term in all offices created thereby, where a definite time of holding is prescribed, is made manifest by the provisions of section 33 Article V, with regard to unexpired terms of judges, and by sections 6 and 7, Article XVIII, which provides, "the term of office for all appointees to fill vacancies in any of the elective offices under this constitution shall extend only to the election and qualification of a successor at the ensuing general election." "In all cases of elections to fill vacancies in office, such election shall be for the unexpired term." When it is remembered that these provisions include every appointive and elective officer, holding for a fixed period of time mentioned in the constitution except county commissioners, who however were clearly given terms of office by other provisions, and State Attorneys and County Solicitors, and they include some elective officers who hold for only two years, and whose successors in cases of vacancies in the offices could not be elected until the month of November preceding the expiration of the term of office in January following, it will be perceived that there was a general purpose to secure uniformity in the period of the holding of successors to fill vacancies in every office having a fixed period of holding either elective or appointive, confining such successor to the unexpired term or time of his predecessor. If it had been intended to except County Solicitors from this general purpose, made more manifest

by the change of language in section 7 of the Executive
Article, it seems reasonable to suppose they would have
been expressly excepted from its provisions, but nowhere
in the constitution do we find any evidence of such an
intention. Reading section 7 of Article IV in connection
with section 27, Article V, in the light of the decisions
under the constitution of 1868, the change of language of
section 7 to meet the objections urged in those decisions,
and the general purpose manifested throughout the entire
constitution as revised to import into offices held for fixed
periods the element of unexpired terms in cases of va-
cancy, we must conclude that vacancies in the office of
County Solicitors happening before the expiration of the
time, to-wit four years fixed by the constitution as the
period of holding, must be filled for the unexpired term,
and not by a new appointment for a new or a full term.
This construction gives effect to both sections, makes the
term of appointees to fill vacancies in such offices uni-
form with other offices held for fixed periods, and gives
effect to the manifest purpose of the constitution, while
the opposite conclusion can be reached only by reasoning
upon narrow and extremely technical grounds, and by
holding that section 7 does not apply in any case to the
office of County Solicitor, because there can be no such
vacancy in that office as ·· contemplated in that section.
If that section does not apply to the office of County So-
licitor then if the Senate is not in session when a vacancy
in that office happens, and the legislature has not pro-
vided for a *locum tenens* until the next session of the Sen-
ate, a constitutional office, indispensable to the business
of a court required by section 26, Article V, to hold six
terms in each year, must remain vacant until the next
session of the Senate, which might not meet for nearly

two years. It can not be presumed that such a result was contemplated by the constitution, especially where it contains no provision requiring the legislature to pass laws upon the subject of vacancy in office. It ought rather to be inferred that section 7, Article IV, was inserted with special reference to vacancies in all offices not otherwise especially provided for, in order that the failure of the legislature to act, might not operate so as to leave the important constitutional offices vacant, and to provide by that section for filling them. Under the construction we adopt such a result can not occur. The original power to fill an office, includes the power to fill an unexpired term in that office, or as the idea is expressed in State *ex rel.* Weeks v. Gamble, 13 Fla. 9, text 16, the power to fill the unexpired term is a part of the original power to appoint vested by section 27 Article V in the Governor and Senate. When a vacancy happens during a session of the Senate as was the case when the relator was appointed in 1899, the vacancy for the unexpired term is properly filled by the Governor and Senate under the original power, and not by the Governor alone under section 7, for the reason that a mode is otherwise provided by the constitution for filling the vacancy for the unexpired term, to-wit: the original power granted by section 27, Article V. If the vacancy happens when the Senate is not in session, and there is no statute providing for a *locum tenens* until the Senate meets again, the Governor appoints for the unexpired term under Section 7, Article IV, because no other mode is provided for filling that vacancy by the constitution and laws. Under the present statute, however, section 217 Revised Statutes, it would be the duty of the Governor to appoint, and such appointee would hold until the end of the next ensuing

session of the Senate unless an appointment should be sooner made and confirmed, or consented to by the Senate (Executive Communication, 14 Fla. 277), and when the Senate next met it would be the duty of the Governor and Senate to fill the office for the unexpired term under the original power to appoint. With this statute in force the Governor could not grant a commission under section 7, Article IV for the unexpired term, for the reason that in such a case the statute and the constitution together would provide a mode of filling the vacancy for the unexpired term. The original power granted to the Governor and Senate by section 27, Article V is ample not only to fill the office for new or full terms, but to fill vacancies occurring before the expiration of the term, but in the one case the duration of the appointment lasts for four years, while in the other its duration is limited to the expiration of the time for which the original incumbent might have held if no vacancy had occurred.

From what has been said, it follows that the relator was properly appointed and confirmed as successor of Peter O. Knight, resigned, for the unexpired term, and not for four years, and that the appointment and confirmation of respondent at the expiration of that time was legal, and consequently that the demurrer to the second, third, fourth, fifth and sixth pleas of respondent should have been overruled. Counsel have not specially argued the propriety of the ruling upon the demurrer to the first plea, and, therefore, we shall not express an opinion upon that question.

The judgment is reversed, and the cause remanded with directions that the demurrer to the pleas numbered from 2 to 6 be overruled, and that such further proceedings be had as may be conformable to law.