125 So.2d 846 (1960)
R.A. GRAY, as Secretary of State of the State of Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellants,
v.
Farris BRYANT, as Governor-elect of the State of Florida, and as a citizen, elector and taxpayer of the State of Florida, Appellee.
Supreme Court of Florida.
December 19, 1960.
Rehearing Denied December 23, 1960.
*848 Richard W. Ervin, Atty. Gen., Fred M. Burns and Wilson W. Wright, Asst. Attys. Gen., for appellants.
Caldwell, Parker, Foster, Madigan & Oven, Tallahassee, and Marion E. Sibley, Miami Beach, for appellee.
Charles R. Scott, Jacksonville, as amicus curiae.
PER CURIAM.
Honorable Farris Bryant, as Governor-elect and as a citizen, elector and taxpayer of this State, filed a complaint for declaratory decree against R.A. Gray, as Secretary of State, and Ray E. Green, as Comptroller, in which he sought a declaratory judgment on the following questions:
1. Which, if any, of the vacancies in the office of circuit judge created by virtue of the certification of the 1960 federal census and the operation of Section 6(2), Article V, Florida Constitution, F.S.A., may be filled by executive appointment in advance of legislative action?
2. If any of such vacancies may be filled by appointment of the present Governor, may the present Governor issue commissions for those appointed to run beyond January 2, 1961?
3. If the present Governor may not appoint or issue commission for terms to run beyond January 2, 1961, may the plaintiff, Governor-elect, after he succeeds to the office of Governor on January 3, 1961, appoint to fill such vacancies "until the general election of 1962 and until the successors of such appointees shall have been elected and qualified?"
The complaint prayed that if the court determined that the present Governor had the power to appoint to any such vacancies for terms expiring on January 2, 1961 and that the Governor-elect would on January 3, 1961 have the power to fill such offices by appointment, the court enjoin the *849 Secretary of State from issuing to any such appointees of the present Governor commissions extending beyond January 2, 1961 and also enjoin the Comptroller from issuing any warrants to any appointees to such offices by the present Governor for any period of time subsequent to January 2, 1961.
The defendants by answer alleged that the trial court was without jurisdiction of the parties and subject matter of the suit only for the reason that the suit in fact sought to bind the incumbent Governor, who is not and may not be made a party to the suit. The right or interest of the plaintiff to maintain a suit for declaratory decree in this instance was not challenged.
In his decree, which is under attack on this appeal, the Chancellor decreed that:
1. The official announcement of the results of the 1960 federal census caused the creation of additional offices of circuit judges only in those instances in which the legislature has provided for creation of such additional offices according to the population formula expressed in Section 6(2), Article V, Fla. Const., F.S.A.
2. The incumbent Governor has the authority to fill such vacancies in the office of circuit judge but the commissions issued to those appointed shall expire at midnight of January 2, 1961.
3. The person who shall hold the office of Governor on and after January 3, 1961 shall have the authority to appoint persons to fill such vacancies until the first Tuesday after the first Monday in January 1963.
The Chancellor then enjoined the Secretary of State from issuing any commissions to persons appointed to fill such vacancies which would extend for any period of time past midnight January 2, 1961. He reserved jurisdiction as regards a restraining order against the Comptroller.
Neither in the assignments of error filed herein nor in the oral argument before this Court have the defendants raised the question of the plaintiff's right or interest to maintain this suit; therefore, this question is not presented to us for decision. Consequently, this opinion cannot be taken as authority or precedent for the proposition that a governor-elect has any standing to contest or enjoin the actions of an incumbent governor as regards executive appointments to be made during the term of the incumbent.
It is evident from the pleadings in this cause that the issues involved have political overtones and that they have arisen because of the ending of the term of one chief executive and the commencement of another's at a time when a large number of newly created judicial offices must be filled by appointment of a chief executive.
It is our opinion that it is unimportant that there will soon occur a change in the person who holds the office of Governor and that the issues should be determined without regard to this fact. Our decision should and would be the same if the incumbent Governor's term were to extend past January 2, 1961 or if the Governor-elect were now the incumbent.
The first issue to be decided relates to the Chancellor's decision that the official announcement of the 1960 federal census created vacancies in the office of circuit judge only in those circuits where the legislature had acted to provide for the creation of additional offices upon the showing, by census authorized by law, of requisite population authorizing creation of such additional offices.
Section 6(2), Article V, Florida Constitution prescribes the formula by which the number of circuit judges in each of the sixteen judicial circuits is to be determined. It reads:
"The legislature shall provide for one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law. In circuits *850 having more than one judge the legislature may designate the place of residence of any such additional judge or judges."
The Chancellor's decree indicates that he construed this section of the constitution not to be self-executing, but on the contrary construed it as requiring that the legislature act to create the offices of circuit judge which a census would authorize.
However, as to the First, Second, Fourth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth, Fourteenth and Fifteenth Judicial Circuits it is immaterial to this case, and to the determination of whether or not the 1960 federal census figures created any vacancies in the office of circuit judge in any of those circuits, whether Section 6(2), Article V be construed to be self-executing or not. This is true because the legislature, by the various sections of ch. 26, F.S.A. and by ch. 59-1005, Laws of Florida, Acts of 1959, has already acted to prescribe that there shall be one circuit judge for each 50,000 inhabitants, or major fraction thereof, in each of those circuits, according to the last census authorized by law.
We have noted that Section 26.02(1), F.S.A., which pertains to the First Judicial Circuit, contains two sentences which may be contradictory. The first sentence names the four counties in the circuit and prescribes that there shall be one circuit judge for each 50,000 inhabitants or major fraction thereof. The second sentence reads:
"No two of said judges may be legal residents of the same county."
Read literally this section in effect limits the number of circuit judges in the First Judicial Circuit to four. Section 6(2), Article V authorizes the legislature to designate the place of residence of any circuit judge in any circuit having more than one such judge, but it does not authorize the legislature to limit the number of judges below the number resulting from the population formula expressed therein as applied to the last census authorized by law.
We judicially know that the First Judicial Circuit, prior to the certification of the 1960 federal census, was authorized to have, and had, four circuit judges. Therefore the provision of the statute limiting each county to one such judge was not a more restrictive limitation on the number of such judges than the constitutional provision. It seems clear that the statutory provision was intended to be an exercise of the power granted the legislature to designate the place of residence of the four judges of the circuit and was not intended to limit the number of judges therein. This is clear because the first sentence of said Section 26.02(1) fixes the number of judges in accordance with the population formula prescribed in the constitutional provision.
If construed literally, the second sentence of Section 26.02(1) is in conflict with the first sentence thereof and with Section 6 (2), Article V and is therefore unconstitutional and void. If construed to mean that there will be one circuit judge resident in each county of the circuit before more than one is resident in any county, the sentence can be held to be valid and gives effect to what we find to be the legislative intent. We so construe its meaning.
In sum the foregoing results in our concluding that the decree of the Chancellor is correct in holding that in those circuits above mentioned as to which the legislature has prescribed that there shall be one such judge for each 50,000 persons, or major fraction thereof, the certification of the 1960 federal census figures did automatically create vacancies in the office of circuit judge in each circuit in which the number of circuit judges now holding office is less than one such judge for each 50,000 persons or major fraction thereof according to the figures shown by said census.
We disagree, however, with the Chancellor in his decision that Section 6(2), Article V, is not self-executing and that the legislature *851 would be required to act before any vacancies in the office of circuit judge would exist in the Third, Fifth, Eighth, Thirteenth, and Sixteenth Circuits even though the 1960 federal census reveals that those circuits have populations which would authorize additional judges.
A study of the history of the constitutional provisions relating to the number of circuit judges for each circuit and the method prescribed for determining the number indicates that the subject has been one of much concern to the people of this state.
Prior to the revision of Article V, as adopted in 1956 and which resulted in the appearance of Section 6(2) therein for the first time, the constitution provided that "there shall be one Circuit Judge to each Judicial Circuit", § 45, and gave the legislature the power to add additional circuit judges with the limitation that the total number of such judges in each circuit shall not exceed one for each 50,000 inhabitants, or major fraction thereof. Thus, as it existed prior to the 1956 amendment, the constitution laid down both a minimum and a maximum number of circuit judges in each circuit, with the legislature having discretion as to the number which would be provided within the limits so established.
The present Section 6(2), Article V is a marked departure from the prior provisions of the constitution. This section does not establish either a minimum or maximum, but rather establishes an inflexible rule which, when applied to the figures revealed by censuses taken from time to time, determines the number of such judges. The section gives the legislature no discretion in determining the number of such judges, or offices.
The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. State ex rel. City of Fulton v. Smith, 1946, 355 Mo. 27, 194 S.W.2d 302. If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing. City of Shawnee v. Williamson, Okl. 1959, 338 P.2d 355. The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing. People v. Carroll, 1958, 3 N.Y.2d 686, 171 N.Y.S.2d 812, 148 N.E.2d 875.
Unquestionably Section 6(2), Article V lays down a sufficient rule by which the number of circuit judges which the people have dictated shall be furnished to them may be readily determined without enabling action of the legislature.
The only factor, or facts, necessary to be supplied from an extraneous source is the population of the circuits. The Chancellor correctly held, over the contrary contention of plaintiff, that no legislative action is necessary to confirm or accept the figures furnished in the 1960 federal census, but that they became effective for this purpose upon their official announcement.
It seems clear to us that the subject provision meets the test and should be construed to be self-executing and as not requiring legislative action to activate the effect of its provisions as to number of judges.
There are other reasons why we feel that the section must be so construed.
The will of the people is paramount in determining whether a constitutional provision is self-executing and the modern doctrine favors the presumption that contitutional provisions are intended to be self-operating. This is so because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people. State ex rel. Noe v. Knop, *852 La. App. 1939, 190 So. 135; Brice v. McDow, 1921, 116 S.C. 324, 108 S.E. 84. See also Vol. 1, Cooley, Constitutional Limitations, (8th ed. 1927) pp. 165-172, and 11 Am.Jur., Constitutional Law, Sections 71-76, and cases therein cited.
A comparison of the present Section 6 (2), Florida Constitution, with the pertinent provisions of Article V, as they existed prior to the adoption of Section 6(2), indicates without doubt that the people intended to depart from a system under which the legislature had the discretion, within minimum and maximum limits, to determine the number of circuit judges in each circuit in favor of a system in which the people would have one office of circuit judge, and one such judge, for each segment of population prescribed therein, as the number be determined from time to time by censuses authorized by law.
The fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfil the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied.
If Section 6(2), Article V, be construed not to be self-executing, but rather as requiring legislative action to create offices of circuit judge authorized by the last census according to law, the effect would be to give the legislature the discretion to create, or not to create, additional offices of circuit judge although the people of this state in that section in the imperative and mandatory sense dictated that they should be created upon showing of the existence of the requisite population. In fact, under such construction the legislature could refuse to provide any circuit judges for a circuit, since there is no minimum number required as there was in the constitution prior to 1956. Further, under such construction the legislature could at its will reduce, or increase within the maximum limitation provided, the number of such judges.
Any such action, or refusal to act, on the part of the legislature would certainly frustrate or nullify the expressed will of the people of this state. We have no reason to believe, and we do not intend to imply, that the legislature will not always follow the dictates of Section 6(2). Nevertheless, a construction that would hold the section not to be self-executing would make it possible for the legislature to fail to act in accordance with the rule prescribed therein and thereby to frustrate the people's will.
Where there is a choice as here such a constitutional provision must always be construed to be self-executing for such construction avoids the occasion by which the people's will may be frustrated.
We point out also that in the instance of this constitutional provision the rule prescribed therein for determining the number of judges is so certain and inflexible as to leave nothing to be done by the legislature except to adopt legislation which accords with the words of the section. The legislature must follow the rule prescribed in the section. It can do nothing more and nothing less, otherwise its action would be unconstitutional and void.
We therefore hold that Section 6 (2), Article V, is self-executing and that upon certification of the 1960 federal census vacancies would exist in the office of circuit judge not only in the circuits for which the legislature has provided enabling legislation, but also in those circuits in which the legislature has not provided such legislation, if the 1960 federal census figures indicate the presence of such vacancies.
We come then to the principal question involved in this appeal.
The plaintiff-appellee, Hon. Farris Bryant, contends that the terms of all circuit judges expire at midnight January 2, 1961; *853 that Section 14, Article V, requires that appointments to fill vacancies in the office of circuit judge shall only be for the unexpired term of such judges; and therefore that any appointments made and commissions issued in filling any such vacancies in the office of circuit judge shall not extend beyond, but shall expire at midnight January 2, 1961.
The defendants, appellants, contend that under the provisions of Sections 6 and 7, Article XVIII, Florida Constitution, and Sections 114.01 and 114.04, Florida Statutes, F.S.A., any such appointments and commissions issued pursuant thereto should extend to the first Tuesday after the first Monday in January 1963, i.e. to the first Tuesday after the first Monday in January next after the election and qualification of a successor.
As above stated the Chancellor decreed that the appointments, and the commissions issued to the appointees, to fill any of the vacancies involved herein could extend only to midnight of January 2, 1961. Implicit in his decree is the decision that those appointed by the incumbent Governor would not hold over and continue in office until election and qualification of their successors, for he held that the person who holds the office of Governor of this State on and after January 3, 1961 would have authority to fill such offices again by appointment on or after January 3, 1961.
It follows that the Chancellor also decided that upon the expiration of the "unexpired term" to which each of the new judges would be appointed by the incumbent Governor such offices would again fall vacant on January 3, 1961.
We think the Chancellor erred in holding that the terms and commissions of those appointed to fill the newly created offices of circuit judge may not extend beyond January 2, 1961. Further, assuming that the Chancellor had been correct in holding that such terms and commissions could not extend beyond January 2, 1961, the Chancellor erred in holding that the mere expiration of each of such terms would ipso facto create a vacancy which could be filled by appointment by the person holding the office of Governor on and after January 3, 1961.
Our research reveals that the specific question now before us has never been presented to this Court under existing constitutional and statutory provisions.
There are three sections of our constitution which make reference to the filling of offices by appointment. There is also one chapter of our state statutes which deals with this subject. We must consider each separately and all of them together in order to determine the correct answer to the question before us.
Section 7, Article IV, Florida Constitution, is the first section of our constitution dealing with the subject. It reads:
"When any office, from any cause, shall become vacant, and no mode is provided by this Constitution or by the laws of the State for filling such vacancy, the Governor shall have the power to fill such vacancy by granting a commission for the unexpired term."
The Chancellor was of the opinion that this section provides the authority in the Governor to fill the subject vacancies and that it also has the effect of limiting the commissions issued "to the present term of the offices to be filled."
In an Opinion Rendered to his Excellency the Governor, 1889, 25 Fla. 426, 5 So. 613, this Court held that Section 7, Article IV, was not applicable to the filling of vacancies in elective county offices, because Section 6, Article XVIII, Florida Constitution, as it then existed, provided a "mode" of filling such vacancies. In that opinion this Court, referring to Section 7, of the executive article at page 615 of 5 So., said:
"Under this section no appointment is to be made to fill a vacancy except when neither the constitution nor the *854 laws provide a mode for filling it, and of course, where the appointment is not made under it, its provisions as to the duration of the appointment do not apply * * *."
The wording of the section makes it clear that it is a catchall provision which applies only when "no mode" for filling vacancies is provided elsewhere in the constitution and laws of the state. See In re Opinion of the Justices, 1935, 120 Fla. 729, 163 So. 76; State ex rel. Landis v. Bird, 1935, 120 Fla. 780, 163 So. 248, 253, and Advisory Opinion to the Governor, 1944, 154 Fla. 822, 19 So.2d 198.
In other cases we have held that Section 7, Article IV, applies only as modified by the provisions of ch. 114, F.S.A., State ex rel. Robert v. Murphy, 1893, 32 Fla. 138, 13 So. 705; In re Advisory Opinion to the Governor, 1927, 93 Fla. 1024, 113 So. 115; Simonton v. State ex rel. Turman, 1902, 44 Fla. 289, 31 So. 821, 830; In re Advisory Opinion to the Governor, 1903, 45 Fla. 154, 34 So. 571; In re Advisory Opinion to the Governor, 1912, 64 Fla. 16, 59 So. 782, and State ex rel. Wynn v. Squarcia, Fla. 1953, 66 So.2d 263.
Further as pointed out in State ex rel. Landis v. Bird, 1935, 120 Fla. 780, 163 So.2d 248, at page 263:
"* * * Section 7 of article 4 of the Constitution contemplates that statutes shall prescribe causes of vacancies in office and provide for filling such vacancies * * *."
This statement is further proof that Section 7, Article IV was intended to operate as a catchall and where there were other pertinent provisions in the constitution and statutes it was not to be operative.
We therefore come to the conclusion that since the constitution and statutes do elsewhere provide a mode for filling the subject vacancies, the provisions of Section 7, Article IV, are not applicable. This Court in its Advisory, Fla. 1957, 96 So.2d 541, reached the same conclusion for no reference whatsoever is made therein to Section 7, Article IV.
Section 6, Article XVIII, is the next section of our constitution relating to vacancies. It reads:
"The term of office for all appointees to fill vacancies in any of the elective offices under this Constitution shall extend only to the first Tuesday after the first Monday in January next after the election and qualification of a successor."
It is followed immediately by Section 7, Article XVIII, which provides that:
"In all cases of election to fill vacancies in office such election shall be for that part of the unexpired term commencing on the first Tuesday after the first Monday in January next after such election."
Section 9, Article XVIII then provides that a general election shall be held in November of each even numbered year "for all elective State and county officers, whose terms of office are about to expire, or for any elective office that shall have become vacant."
Each of these sections is concerned with elective offices such as those with which we are now dealing.
These sections of the constitution erect a procedure, a method or mode, for filling vacancies in elective offices that is complete and logical. Their obvious purpose is to provide a method for filling vacancies only until the people themselves can act to do so in an election and at the same time preserve orderly cycles of terms of office.
It is pertinent to note that Section 6, Article XVIII makes no reference to any part of the unexpired term of the office which is vacant. The term of office of the appointee is not limited by the expiration of the term of the office, or term of the officer, which is to be filled, but *855 rather by the time at which the elected successor will take office.
The intent of Section 6, Article XVIII is clear and unmistakable. It is simply that a vacancy in such an office is to be filled by appointment for a special or ad interim term, which term is unrelated to, not controlled by, and is not a part of the regular term of the office, but which is limited by and terminates upon the people electing a qualified successor.
That the appointee receives a special, or ad interim, term of office is made clear by the language of the section which begins "The term of office for all appointees * * *."
We have no doubt that the wording of the section was deliberate and by design to accomplish an avoidance of a situation where, as here, a regular term of office would expire between an appointment to fill a vacancy therein and the next general election. In such a situation under the theory of the Chancellor and the plaintiff-appellee an appointee would be succeeded by an appointee, whereas the obvious intent of the drafters is that, barring abandonment or vacation of the office by the appointee, the appointee would continue to serve until replaced by one chosen by the people in an election.
It follows that once the executive power is exercised to fill a vacancy in an elective office, the power is spent and may not be again exercised with respect to that office, unless it again falls vacant from one of the causes provided by law before the people have the opportunity to elect a successor and he have the opportunity to begin his term the January after his election.
If there be any doubt that such was the intent of the people in adopting Section 6, Article XVIII, that doubt was dispelled completely and clearly by the legislature through the adoption of ch. 114, F.S.A.
This chapter of the statutes does two things pertinent here. First, in Section 114.01 it prescribes the cases in which offices shall be deemed vacant. Second, in Section 114.04 it prescribes the mode of filling all offices which shall have fallen vacant.
The pertinent sections of this chapter, Sections 114.01 and 114.04, were adopted in 1868 (ch. 1633) and have continued unchanged since their adoption. They were no doubt adopted in satisfaction of the contemplation of Section 7, Article IV, that the legislature would "prescribe causes of vacancies in office and provide for filling such vacancies." State ex rel. Landis v. Bird, 163 So. at page 263, supra.
Section 114.01 reads in part:
"Every office shall be deemed vacant in the following cases:
* * * * * *
"(6) When any office created or continued by the constitution or laws shall not have been filled by election or appointment under the constitution or law creating or continuing such office. * * *."
The newly created offices of circuit judge fall within the provisions of Section 114.01(6) above quoted. They are offices created under the constitution. They have not been filled either by election or appointment.
They are therefore subject to being filled under the authority of Section 114.04 which reads:
"In all such cases, and in all other cases in which a vacancy may occur, if the office be a state, district or county office (other than a member or officer of the legislature), the governor shall fill such office by appointment, and the person so appointed shall be entitled to take and hold such office until the same shall be filled by an election as provided by law, and in cases requiring the confirmation or the advice and consent of the senate, the person so appointed may hold until the *856 end of the next ensuing session of the senate unless an appointment be sooner made and confirmed and consented to by the senate." (Emphasis added.)
The provisions of this section of the statutes are clearly applicable to this case; the section amplifies and is in accord with Section 6, Article XVIII.
In his decree the Chancellor made no mention of ch. 114, F.S.A. He was of the opinion that Section 14, Article V, was controlling in this case in that it prevented any appointment extending beyond the expiration of the terms of all circuit judges which all expire in January 2, 1961.
Section 14, Article V, is the last of the constitutional provisions relating to filling of vacancies. It reads:
"When the office of any judge shall become vacant from any cause, the successor to fill such vacancy shall be appointed or elected only for the unexpired term of the judge whose death, resignation, retirement, or other cause created such vacancy."
The wording of this section in itself indicates to us that it was not intended to apply to vacancies in newly created offices, such as involved herein, but only to those offices which had been filled once and become vacant because of the "death, resignation, retirement, or other cause" which resulted in the vacation of the office by the previous holder thereof. Every reference in the statute is personal to a particular judge and to the term of office of a judge.
But we prefer not to decide the effect of this section of the constitution on such a narrow basis.
Section 14, Article V of our present constitution is a re-enactment of Section 33, Article V, of the Constitution of 1885. In re-enacting this provision not one word therein was changed.
As stated in Vol. 1, Cooley, Constitutional Limitations (8th ed. 1927) page 136:
"* * * if the new instrument reenacts in the same words provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in those particulars, but to continue it in uninterrupted operation. * * *"
Further, when an identical provision of a previous constitution is readopted in a subsequent document, it is presumed that such provision was adopted with the construction previously placed upon it. 16 C.J.S. Constitutional Law § 35; State ex rel. West v. Butler, 1915, 70 Fla. 102, 69 So. 771, and Advisory, 1957, 96 So.2d 541.
There is another rule relating to constitutional construction which deserves observance. It is well stated in State v. Florida State Improvement Commission, Fla. 1952, 60 So.2d 747, at page 750, to-wit:
"* * * If, however, any interpretation or construction is necessary in order to determine the purpose of the Legislature in proposing this amendment and of the people in adopting the same, it is a cardinal principle of constitutional law that we may resort to the history of the times in order to determine the evil sought to be remedied and the purpose to be accomplished."
Turning first to application of the last mentioned rule we find that "the evil sought to be remedied and the purpose to be accomplished" by the adoption of Section 33, Article V, Constitution 1885, readopted as present Section 14, Article V, has been recorded in the decisions of this Court on numerous occasions.
Beginning with the case of State ex rel. Robert v. Murphy, 1893, 32 Fla. 138, 13 So. 705, 716; then in State ex rel. Hodges v. Amos, 1931, 101 Fla. 114, 133 So. 623, 625; again in State ex rel. Landis v. Bird, 1935, 120 Fla. 780, 163 So. 248, 262; and recently in our Advisory, 1957, 96 So.2d 541, we stated that this provision was adopted to *857 change the rule announced in In re Tenure of Office of Circuit Judges, 1877, 16 Fla. 841. The rule announced in said opinion was that a judge of a circuit court, appointed by the governor and confirmed by the senate, held his office for a full eight years, and that no part of a previous eight years during which another had held the office (but had vacated it) entered into the computation of time for which the second appointee held.
The rule announced in 16 Fla. 841 was the evil to be remedied.
The purpose sought to be accomplished by adoption of the subject constitutional provision was simply to provide a limitation "upon the power to fill the office for a new or full term upon the happening of a vacancy, which power would exist in the absence of such provisions, or of other provisions creating technical terms of office." Simonton v. State ex rel. Turman, 1902, 44 Fla. 289, 31 So. 821, 828.
This section was not designed to operate as a limitation on ad interim appointments to fill vacancies in judicial offices. The following is proof of this fact.
Section 6, Article XVIII, as adopted in the Constitution of 1885 prevented such ad interim appointments in elective offices from extending past the election and qualification of a successor "at the ensuing general election."
Section 7, Article 5, Constitution of 1868, the forerunner of the present Section 7, Article IV, prevented such appointments from extending past the "next election". This section was in effect at the time of the opinion In re Tenure of Office of Circuit Judges, supra, and had then been construed by this Court in State ex rel. Weeks v. Gamble, 13 Fla. 9 to apply to elective offices and to grant the power only to fill a special vacancy embraced in the period between the time the office becomes vacant and the filling of the office by election.
Thus it is clear that the filling of vacancies by ad interim appointments was not the evil to be remedied, rather the people were concerned only with preventing new or full terms being conferred at the time a successor was elected, or appointed and confirmed, at the termination of the ad interim term.
The use of the word "appointed" in the phrase "the successor to fill such vacancy shall be appointed or elected only for the unexpired term" might suggest that the section was intended to apply as a limitation on the length of the ad interim terms granted to fill vacancies.
This suggestion is nullified by what has been said above as to the evil to be remedied and the purpose to be accomplished by adoption of Section 14, Article V, and its predecessor.
Further, at the time of the adoption of the section some judicial offices were filled by election, others, notably circuit judgeships, were filled by appointment of the governor with confirmation by the senate. The word "appointed" was necessary, therefore, to limit the regular term of one appointed by the governor and confirmed by the senate to the unexpired term of the predecessor judge. In view of the fact that Section 7, Article XVIII, as adopted at the same time that the provision now found in Section 14, Article V, was adopted limited the term of one elected to fill a vacancy in office to the unexpired term of the office makes it clear that the principal purpose of Section 14, Article V, was directed to preventing new or full terms being given to appointive judicial officers.
The reason for the use of the word "appointed" in the section is still as necessary as it was in 1885. Although circuit judges are now elected, some judicial offices are still filled by appointment by the governor with confirmation by the senate. See ch. 33, F.S.A.; ch. 8521, Acts of 1921; ch. 11357, Acts of 1925, Extraordinary Session; and ch. 57-1033, General Laws 1957. Further there is no constitutional provision *858 which requires election of the judges of the statutory courts which the legislature is authorized to create. Under Section 27, Article III, Florida Constitution, the legislature may require that they be appointed or elected.
The original purpose sought to be served by the provision in Section 14, Article V, is therefore still a valid purpose necessary to be served.
There is nothing in the constitution or laws of Florida today which indicates that the mere re-enactment in 1956 of the words of Section 14, Article V, was intended to give them a different meaning or that they were designed to accomplish a different purpose than when first adopted. The presumption is that its re-enactment was not intended to change its force or meaning.
As we said in Advisory, 1956, 96 So.2d 541, 545, this section has always been construed as merely providing a limitation "upon the power to fill the office for a new or full term upon the happening of a vacancy". It has never been construed to limit the "ad interim appointment for the term prescribed by Section 6 of Art. XVIII."
In the last mentioned Advisory we were concerned with the effect on Section 6, Article XVIII of the re-enactment of Section 14, Article V, and of Section 26(1), Article V. We there concluded as we do now that these sections did not modify Section 6, Article XVIII "insofar as appointments to fill vacancies in judgeships are concerned." 96 So.2d at page 546, infra.
Where a constitutional provision will bear two constructions, one consistent and the other inconsistent with an intention clearly expressed in another provision, that construction which is consistent should be adopted so that both sections may stand and have effect. A construction that nullifies a specific clause will not be given to a constitution unless absolutely required by the context. Advisory, 1957, 96 So.2d 541 and cases therein cited.
In this instance if we construe Section 14, Article V as limiting the ad interim term of one appointed to fill a vacancy in the elective office of circuit judge so as to prevent such ad interim term from extending past the expiration of the term of all circuit judges then the intention clearly expressed in Section 6, Article XVIII that the ad interim term of such an appointee should extend to the January following the election and qualification of a successor is nullified.
However, if we construe Section 14, Article V to mean that one elected to fill a vacancy in an elective judicial office does not receive a new full term but only that portion of the unexpired term of the officer, or class of officers, involved, it is not inconsistent with Section 6, Article XVIII, allows the latter section to stand and have effect, and further is consistent with Section 7, Article XVIII.
We reach the same conclusion here that we reached in our Advisory, in 96 So.2d 541, supra, i.e. that ad interim vacancies in elective judicial offices are filled under the provisions of Section 6, Article XVIII, and ch. 114, F.S.A., by appointment of the governor for a term extending until the first Tuesday after the first Monday in January next after the election and qualification of a successor at the next general election.
We have not overlooked the fact that Sections 15 and 16, Article V, provide that terms of all circuit judges run concurrently for six years and that the people intended that the cycle of these terms be fixed and not disturbed.
Our decision does not and cannot disturb the cycle so established.
The ad interim term given to one appointed to fill a vacancy in an elective office is in no wise related to or affected by the expiration of the regular term of the office. Such ad interim term is a special term carved out of the regular terms of the office. It begins when the office falls *859 vacant and terminates with the election and qualification of a successor. It is a contrivance designed to fill important offices by executive power until the people can exercise their original power to fill the office by election. See State ex rel. Weeks v. Gamble, 13 Fla. 9.
One appointed to fill an ad interim vacancy in an elective office does not become the holder of any part of a regular term of such office, for only the people can grant the holder a regular term or any part thereof.
The ad interim terms granted to those who may be appointed circuit judge by the incumbent governor will expire in the January following the election of those to fill the vacancies in such offices. Those persons thus elected will enter upon the remainder of the regular term of such offices. Section 7, Article XVIII limits the term of those elected to the unexpired term of the office as does Section 14, Article V. Further Section 15, Article V requires that all offices of circuit judge be filled by election in November 1966.
Thus the cycle of terms will be preserved.
In the instant case the result of our decision would not be different even if we were to agree with the Chancellor in his view that Section 14 of Article V has the effect of limiting the terms of office of those who may be appointed by the incumbent governor to midnight January 2, 1961, i.e. the expiration of the current cycle of all offices of circuit judge.
Even though we were to adopt this view of the Chancellor, we would nevertheless be forced to conclude that those appointed by the incumbent governor would continue to hold their offices as circuit judge until the January following the election and qualification of their successors at the general election in November 1962.
This Court settled this question in the case of State ex rel. Landis v. Bird, 163 So. 248, supra, when it decided (1) that "There is no provision of law that an office `shall become vacant' or `shall be deemed vacant' because of an expiration of an official term when the successor to the incumbent has not been elected or appointed by the mode provided by law for filling the office * * *.", 163 So. at page 264, and (2) decided that the statute, ch. 114, F.S.A., "does not authorize an executive appointment to fill an office as for a vacancy therein when a term of an office expires and a successor to the incumbent has not been elected or appointed and confirmed, as may be required for filling regular terms in the office", 163 So. at page 265, and (3) decided at page 269 of said opinion that "Section 14 of article 16 of the Constitution in legal effect provides that such judge [the incumbent] `shall continue in office' after the expiration of his official term until his successor is `duly qualified.' And while he so continues in office and the office does not `become vacant,' a successor to such judge can be duly qualified only after being appointed by the governor and confirmed by the senate."
The fact that in the Bird case the incumbent judge was the holder of the regular term of office, and not merely the unexpired portion of the regular term (which the chancellor held would be the extent of the term of each of the appointees of the incumbent governor in this case), does not in anywise alter the fact that each such appointed judge would at the expiration of the term be the lawful holder and incumbent of each such office.
Nor does the fact that the office of circuit judge is now elective alter the applicability of the Bird decision to this case. The determinative factor on this point is that the incumbent continues to serve after the expiration of his term and until the qualification of his successor. It matters not that the method of "qualification" of the successor was then by appointment of the governor and confirmation by the senate and is now by election of the people. The *860 requirement is the same and only the mode of qualification of the successor is different.
Section 114.01, F.S.A., which prescribes the cases in which offices shall be deemed vacant, has not been amended since the Bird decision. It does not list the expiration of a term of office of an elective office, which has been lawfully filled by appointment, as being a cause of a vacancy. Nor have we found any other provision of law which would create a vacancy in such a case. The fact is that the clear-cut provisions of Section 114.04 and Section 14, Article XVI, Fla. Const., dictate that after being filled by appointment such an office does not become vacant until a successor is elected and qualified.
The executive power of appointment cannot be exercised to fill an elective office unless the office be deemed vacant under the law. The offices here involved are now vacant under the provisions of Section 114.01(6), F.S.A.
Assuming as we have in this discussion that the Chancellor's view of the term of office of the newly created offices is correct, if the incumbent governor fills the offices by appointment they will not thereafter be vacant in the sense that they may be filled by executive appointment, but they will be vacant in the sense that under the provisions of Section 7, Article XVIII, they are subject to being filled by the people at the next general election.
In the case of State ex rel. Landis v. Baxter, 1936, 122 Fla. 312, 165 So. 271 the governor in 1932 appointed Mr. Baxter to the Broward County Port Authority, his commission being to serve out the unexpired term of his predecessor, which expired January 1, 1935, or until his successor was duly elected and qualified. No successor was elected at the general election in November 1934. In February 1935 the governor appointed another to the office held by Baxter. This Court held that the last appointee could not oust Baxter. The court ruled that Baxter was the incumbent and that an office is not vacant so long as it has an incumbent who has the lawful right under the constitution or a statute to continue therein either for a fixed term or until the happening of some future event such as the election of a successor.
The effect of the decision in the Baxter case is that the mere expiration of a regular term of office in an elective office for which there is no elected successor does not cause the office to become vacant in the sense that it can be filled by appointment of the governor, and that the incumbent continues to hold such office until the election of a successor  and this even though the incumbent was himself an appointee to fill an unexpired term.
If the Chancellor's view of the effect of Section 14, Article V on the length of the terms to which the incumbent governor may appoint be the correct view, this Baxter case and the principle stated therein would prevent the offices from being deemed vacant in the sense that the governor-elect could fill them by appointment on or after January 3, 1961.
As we view the Baxter case it stands for the same rule as that announced in the Bird case, and merely applies it to a case in which the office was elective and the incumbent was an appointee to fill an unexpired term.
In his brief, the plaintiff-appellee contends that the Baxter case is not applicable because the statute creating the office there involved specifically provided that the members of the authority would hold office "for the term for which they were elected, and until their successors are elected and qualified. * * *" (emphasis added) Sec. 6, ch. 15107, Laws of Fla., Special Acts of 1931.
This position is not sound. Section 14, Article XVI, would have required the same result without the presence of the italicized provision in the statute.
*861 We have not overlooked the contention of the plaintiff-appellee that the case of State ex rel. Landis v. Taylor, 1933, 108 Fla. 541, 146 So. 549, controls the case at bar. We have carefully considered the reasoning and holding in that case and do now recede from it.
In his decree the Chancellor relied upon the Taylor case and the case of State ex rel. Davis v. Collins, 1931, 101 Fla. 371, 134 So. 595. Despite the fact that the Collins case is mentioned in the Bird case, but not specifically overruled therein, the decision in the latter case is so plainly contrary to the decision in the former that the Bird case must be held to have overruled the Collins case; we now make it clear that such was the result and therein we receded from the decision in the Collins case.
In summary we in this opinion do decide that:
1. Section 6(2), Article V, Florida Constitution is self-executing and upon the certification of the 1960 federal census there was created one office of circuit judge for each 50,000 inhabitants or major fraction thereof in each of the judicial circuits of this state.
2. If the number of circuit judges presently holding such offices in any circuit be less than one such judge for each 50,000 inhabitants or major fraction thereof as shown by the said census, there now exist vacancies in each such circuit in a number necessary to provide one such judge for each 50,000 inhabitants or major fraction thereof, and the incumbent governor has both the authority and duty to fill such vacancies by appointment.
3. Any commission issued by the incumbent governor in filling any vacant office of circuit judge should run to the first Tuesday after the first Monday in January following the next ensuing general election to be held in November 1962. If any of these vacant offices not be filled by the incumbent governor, the person who is governor on and after January 3, 1961 will have the authority and duty to fill such vacancies by appointment and any commission issued by him should run to the date above set forth.
4. The person who is governor on and after January 3, 1961 will have no authority to appoint any person to the office of circuit judge, which office shall have been filed by appointment of the incumbent governor, unless any such office shall fall vacant through one of the causes provided by law.
This Court commends the parties to this cause, their counsel, and the amici curiae for their assistance to it at argument and in their briefs, and for the dispatch with which the matter has been handled.
In view of the element of time involved in this matter this Court will not follow the usual course, but does now vacate the decree of the Chancellor and the injunction rendered therein against Honorable R.A. Gray, as Secretary of State, and does hereby dismiss this cause in the trial court.
The decree of the Chancellor is vacated, the injunction against Honorable R.A. Gray is vacated, and the cause in the trial court is dismissed.
THOMAS, C.J., and DREW and O'CONNELL, JJ., concur.
THORNAL, J., concurs with opinion.
HOBSON, J., concurs in part and dissents in part.
TERRELL and ROBERTS, JJ., dissent.
THORNAL, Justice.
I agree with the judgment of reversal reflected by the Per Curiam opinion. In *862 addition to the reasons stated, however, I reach the same conclusion for an additional reason not fully discussed herein.
The Chancellor appears to have arrived at his decree almost exclusively on the applicability of Section 14, Article V, Florida Constitution. If one agrees with the Chancellor's basic premise, his conclusion is difficult to avoid. However, I disagree with the Chancellor's view that Section 14, Article V, supra, concludes the instant matter. On the other hand, I do not feel that Section 14, Article V, supra, has any applicability whatsoever to the problem presented to us. When this section of the Constitution is removed from the litigation it is impossible to arrive at the conclusion reached by the Chancellor.
It is unnecessary to apply rules of construction to arrive at the meaning of a constitutional provision when the language of the Constitution is clear and explicit. It is my view that Section 14, Article V, supra, is clear and explicit and, therefore, precludes the necessity of applying various rules of construction.
Section 14, Article V, Florida Constitution, reads as follows
"When the office of any judge shall become vacant from any cause, the successor to fill such vacancy shall be appointed or elected only for the unexpired term of the judge whose death, resignation, retirement, or other cause created such vacancy." (Emphasis added.)
When one bears in mind that the current situation involves vacancies which have sprung into existence by virtue of newly created offices, rather than vacancies created by acts of incumbents, it seems clear that the quoted section could not have been framed with the current situation in mind. When we examine those portions of Section 14, supra, which we have underscored, it is obvious that it applies only to a situation where the office of a judge has been occupied and, thereafter, becomes vacant for some reason.
The section specifically refers to "the office of any judge." The vacancy comprehended by this section certainly must be one which occurs in an office previously occupied. If the view needs further support let us look to the language of the section which provides that "the successor to fill such vacancy" shall be appointed or elected. Obviously, for the appointee to be "the successor" he must succeed someone. An appointee to an office not previously occupied by anyone can not be a "successor" because there is no predecessor.
A final reason for this view of Section 14, Article V, supra, is that it provides for the appointment or election for the unexpired term "of the judge whose death, etc." created such vacancy. The term of the appointee is thereby directly related to the term of a predecessor in the office. If the office has not been previously occupied by an incumbent there could be no "unexpired term of the judge" whose death etc. created the vacancy.
When analyzed carefully it appears to me to be clear that Section 14, Article V, can have no applicability to appointees to fill newly created judgeships. This does not mean that there is no constitutional or statutory provision for the filling of such vacancies. It merely means that this particular section upon which the Chancellor relied for his conclusion was not drafted to cover the situation here presented. When the calendar and election laws tell that this situation could not possibly arise except once every twenty years, it is understandable that those who drafted the Constitution would make provision to cover the situation in some other general article. This is so because only once in every twenty years will a new census and a change of governors' administrations present the situation.
This then leads us to a search for the authority to fill the instant vacancies. As *863 pointed out in the Per Curiam opinion, this authority is clearly found in Chapter 114, Florida Statutes, F.S.A., which was obviously enacted as an implementation of Section 7, Article IV, Florida Constitution.
Under Section 7, Article IV, supra, when any office shall become vacant "and no mode is provided by this Constitution or by the laws of the State for filling such vacancy" the Governor fills the vacancy for "the unexpired term." We must then undertake to ascertain whether any "mode is provided" by the Constitution or laws of the State. This leads us to Section 114.01(6), Florida Statutes, F.S.A., which provides that when an office is created and has not been filled it is vacant. Section 114.04, Florida Statutes, F.S.A., authorizes the Governor to fill such vacancy and it further provides that the appointee shall "hold such office until the same shall be filled by an election."
The term of such appointee is expressly provided for in Section 6, Article XVIII, Florida Constitution, which clearly stipulates that the terms of such appointees "shall extend only to the first Tuesday after the first Monday in January next after the election and qualification of a successor."
By his decree the able Chancellor took note of Article V, Section 26(1), Florida Constitution, which provides in sum that revised Article V, "shall supersede any other provisions of the present constitution of Florida in conflict herewith, which shall then stand repealed." It appears to be the Chancellor's view that Article V, which is the judiciary article, is exclusive and conclusive and that the quoted language of Section 26 of the Article precludes our consideration of other applicable provisions of the Constitution. Our difficulty with this argument simply is that Section 14, of Article V, upon which he relies, is not applicable to the instant situation and by the final decree itself, it is stated that this section does not "conflict" with other provisions of the Constitution. Consequently, it would not be subject to the provision of Article V, Section 26, supra.
I therefore have the view that Section 14, Article V, cannot possibly be applicable to the current situation. It is my view that Section 7, Article IV, Florida Constitution, as implemented by Chapter 114, Florida Statutes, F.S.A., is clearly applicable and is the only provision in the laws of Florida authorizing appointments to fill these vacancies. Section 6, Article XVIII, Florida Constitution, defines the term of the appointees and is unaffected by any other provision of the Constitution. I am not disturbed by the provisions of Sections 15 and 16, Article V, which define the so-called six year cycle for circuit judges. This is so because Section 6, Article XVIII merely establishes an interim term which fits into the six year cycle and which ultimately would have no adverse affect whatsoever upon the continuity of the cycle.
For these reasons, as well as those stated in the Per Curiam, I would reverse the final decree.
DREW, J., concurs.
HOBSON, Justice (concurring in part and dissenting in part).
I concur in the Per Curiam opinion except I do not agree that the Constitutional provision Section 6, subsection (2) of Amended Article V of our Constitution is self executing although it is mandatory. It prescribes the procedure to be followed by the legislature but it is not in its terms self executing. Moreover I cannot at this juncture conclude that there can be an election of circuit judges in 1962.
It should be noted at the threshold and be ever kept in mind that the offices of circuit judges with which we are dealing are newly created offices. Our Constitution in Section 16, Article V still contains the provision under the title "Terms of office of certain judges," that "The terms of office *864 of * * * circuit judges shall be six years".
There is no difficulty in determining that Section 14, Article V, is inapplicable to these newly created judicial posts. This is so because said section deals only with a vacancy in office created by such existing office being "vacated" by the incumbent and not to a vacancy resulting from the creation of a new office. Obviously the framers of the subject constitutional provision did not envisage the present situation. Furthermore we must interpolate in Section 14, Article V the word "such" between the words "other" and "cause". The application of the doctrine of ejusdem generis controls. There may be other causes which would create a vacancy in an existing circuit judgeship than those delineated in Section 14, Article V. This section states in effect that a pre-existing office of circuit judge which has been vacated by "death, resignation, retirement," "or other cause" may be filled by election or appointment for the unexpired term of such incumbent. It leaves room for at least one other such cause which I can envisage  "abondonment". I am therefore of the opinion that Mr. Justice Thornal has reached the proper conclusion in stating that Section 14, Article V is not applicable herein.
I am satisfied that there must be implementation by legislative action to create "one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law", but I think that in the several circuits wherein the legislature has heretofore passed so-called "enabling acts" the impact of the recent official federal census thereupon has created such offices. However in those circuits wherein the legislature has not passed anticipatory enabling acts the circuit judgeships cannot come into existence until the legislature meets and carries out the mandate of Section 6, subparagraph (2) of Article V of the Florida Constitution.
Much has been said about the judicial cycle for circuit judges. Although I am cognizant of the intendment that such a cycle should be created, Section 15 of Article V of the Florida Constitution does not establish a six year cycle for all circuit judges. It specifically designates the years in which there shall be an election of circuit judges. It states "election of circuit judges shall be held in the year 1960 and every six years thereafter". One of the fundamental rules as I understand it with reference to constitutional construction is that when the people have spoken in their Constitution with reference to a specific matter it is to the exclusion of any or all constructions upon the same subject[1]. Therefore I am convinced that there can be no election of circuit judges until the year 1966. Neither Section 6 of Article XVIII nor F.S. Chapter 114.04, F.S.A. disturbs me because under Section 15, Article V of our Constitution it is provided in effect by the people that there shall be no election of circuit judges except "in the year 1960 and every six years thereafter".
Moreover no argument as yet has convinced me that the ruling of this Court in State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248, 253, is not controlling herein. In that case we decided that once a circuit judgeship was lawfully held by an incumbent he would hold over, even after the expiration of his term of office, until his successor is "duly qualified". The only difference which I can discern between the instant suit and the Bird case is that "duly qualified" at that time meant "appointment by the Governor and confirmation by the Senate". "Duly qualified" now means the "election and qualification" of a successor. Of course, one might be elected and fail to qualify. Consequently it takes both election and qualification of a successor to replace an incumbent circuit judge lawfully holding such office.
*865 I am therefore compelled to hold that the incumbent governor has the power, if not the duty, to appoint qualified lawyers to fill the subject circuit judgeships which now exist by virtue of the enabling acts and the official federal census and that his appointees will remain in office and hold over until their successors are "duly qualified".
I realize that I probably stand alone in connection with my determination that there can be no election of circuit judges until the year 1966. I am not adamant with reference to my conclusion on this subject because as I stated in State ex rel. West v. Gray, Fla., 70 So.2d 471 and again in Ervin v. Collins, Fla., 85 So.2d 852, 59 A.L.R.2d 706, if there be any doubt about the proper construction to be given to the Florida Constitution the people should be permitted to resolve it at the polls. However, I do wish my views recorded because as an individual member of this Court I do not desire to be bound by a conclusion that applicants for the positions of circuit judgeships must or for that matter can, run for office prior to the election of 1966.
TERRELL, Justice (dissenting).
I regret that I find myself unable to agree with my brethren on their theory and disposition of this case which grows out of controversy between the parties hereto as to whether the retiring or the incoming governor is authorized by law to appoint and commission certain circuit judges alleged to have accrued by reason of increase in population shown by the recent federal census. I think the question is controlled by Section 6(2), Article V of the constitution, which provides:
"The legislature shall provide for one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law. In circuits having more than one judge the legislature may designate the place of residence of any such additional judge or judges."
There are sixteen judicial circuits in the state and it is contended that the recent federal census shows that the increase in population in the state is such that ten of these circuits are entitled to an increase in circuit judges as follows:

 First Circuit 2
 Second Circuit 1
 Fourth Circuit 3
 Sixth Circuit 2
 Ninth Circuit 1
 Tenth Circuit 1
 Eleventh Circuit 5
 Twelfth Circuit 1
 Thirteenth Circuit 3
 Fifteenth Circuit 1

The majority opinion holds that when the result of the federal census was certified to the state, it automatically activated Section 6(2), Article V of the Constitution, and authorized the governor to appoint the circuit judges in each circuit shown to have accrued to it by the increase in population stated above. There is imbedded in the controversy the further question of whether the commission of said appointees should run to Tuesday after the first Monday in January, 1963, following the general election in 1962, or whether it should run to January 2, 1961, the date of the change in administrations. In my opinion we do not get to the latter question for reasons hereinafter shown.
I do not think that Section 6(2), Article V of the Constitution, became effective automatically when the result of the recent federal census was certified to the state. I think it requires legislation to activate this provision of the Constitution and that its very terms so require. To hold that a population certificate out of Washington may ignore the prerogative of the legislature so given and create twenty additional circuit judges with the additional burden to the taxpayers without a word from the legislature is without precedent or authority in my judgment. For this reason the judges' offices in question are not in being until the *866 legislature creates them and provides that said judges be appointed by the governor or elected by the people. This court has repeatedly held that this is the method provided by the Constitution for filling vacancies in newly created offices.
I do not think Section 6(2), Article V of the Constitution permits any other interpretation. Its function is initiated with the declaration, "the legislature shall provide for one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law." It concludes with the injunction: "In circuits having more than one judge the legislature may designate the place of residence of any such additional judge or judges."
In my judgment, authority in the legislature "to provide for one circuit judge in each circuit for each fifty thousand inhabitants" was nothing more than a pattern given it [legislature] by the people to guide it in providing circuit judges for the different circuits. If there is anyone on this court who does not believe that the right of the "legislature to designate the place of residence of any additional judge or judges in a circuit" having more than one, let him inquire of the legislators or their constituents having business with the court.
The majority opinion points out that these considerations are not material to the First, Second, Fourth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth, Fourteenth and Fifteenth Judicial Circuits because Chapter 26, Florida Statutes, F.S.A., and Chapter 59-1005, Laws of Florida, Acts of 1959, have already prescribed that there shall be one circuit judge for each 50,000 inhabitants, or major fraction thereof in each of these circuits according to the last census authorized by law.
My answer to this contention is that these acts speak as of the time, circumstances and number of judges in the circuit when enacted. It is proposed here to add from one to five circuit judges to ten of the sixteen circuits in the state. This will completely change the judicial picture. In doing this, it may become necessary or expedient in the discretion of the legislature to remodel, change or alter the boundaries or other aspects of some or all the circuits which the legislature has power to do. There would certainly be instances in which the legislature would want to designate the residence of the new judges which they are at liberty to do under the Constitution.
In clothing the legislature with these powers, Section 6(2), Article V of the Constitution, speaks in the imperative. Like all population laws, it is ambulatory and must be so construed because judicial office cannot be created until the contingency on which it is based arises and the time to designate the residence of the judge matures. I can think of no more compelling reason for holding that Section 6(2) is not self-executing, and being so, the vacancies which it is proposed to fill are not in being and will not be until the legislature sees fit to create and designate the means or method for filling them.
It is accordingly my opinion that the legislature is the only body clothed with power under Section 6(2), Article V of the Constitution, to "provide" for the circuit judgeships in question. The legislature has not had opportunity to act so there are at present no judgeships to fill or judges to appoint. It takes affirmative action on the part of the legislature to create circuit judgeships and draw money from the treasury to pay them. The legislature is the only authority authorized to do this. The majority opinion takes this authority from them, deprives them of designating residence of the new judges and making other adjustments in the circuits to meet the new conditions that may have arisen.
Reason for said judges was not apparent until the result of the recent federal census was made known to the legislature. It now becomes the duty of the legislature when it next convenes to consider the results of the recent census and follow the direction given it in Section 6(2), Article V of the Constitution, *867 by "providing" such circuit judgeships as it may deem necessary to meet the needs of the different circuits, said judgeships to be filled by appointment by the governor, or election by the people, the only method provided by the Constitution. These judgeships are provided to meet the contingency as it arises under Section 6(2), Article V and thus far are affected by no other provision of the Constitution.
I therefore dissent.
ROBERTS, Justice (dissenting).
This is an appeal from a final decree of the Circuit Court in and for Leon County, Florida, entered in a suit for declaratory relief filed by the appellee, as Governor-elect and as a citizen, elector and taxpayer of the State of Florida, against the appellants, as the Secretary of State and the Comptroller of the State of Florida. Jurisdiction of the appeal attaches under Section 4(2) of revised Article V, Florida Constitution, authorizing an appeal directly to this court from final judgments or decrees construing a controlling provision of the Florida Constitution.
The factual background against which the instant litigation was instituted and the decree here reviewed was entered is, briefly, as follows: The recently completed Federal Census shows a population increase in the several judicial circuits of Florida sufficient to justify the appointment of additional circuit judges under the authority of Section 6 of Article V, Fla. Const., and Chapter 26, Fla. Stat., F.S.A. The terms of office now being served by all incumbent circuit judges in this state began simultaneously in January of 1955 and will expire simultaneously on January 2, 1961, in accordance with the six-year judicial cycle for circuit judgeships established by constitutional amendment in 1942 and carried forward in the revision of Article V of the Constitution adopted in 1956 as Section 15 of Article V.
The principal question posed by the appellee in his suit for declaratory relief may be stated as follows: If vacancies presently exist in the offices of the additional circuit judgeships resulting from the population increase and the legislative and constitutional provisions referred to above, is the incumbent Governor authorized to commission his appointees to fill such vacancies for a term ending on the first Tuesday after the first Monday in January, 1963, following the general election in 1962; or should he commission such appointees for a term ending on January 2, 1961  which date, as noted above, marks the end of the current six-year judicial cycle of circuit judgeships in this state?
Some authority for commissioning such appointees for a term extending beyond January 2, 1961, is said by the appellee to be claimed by the incumbent Governor under the provisions of Section 6 of Article XVIII, Fla. Const., as follows:
"Term of appointees to fill vacancies. The term of office for all appointees to fill vacancies in any of the elective offices under this Constitution shall extend only to the first Tuesday after the first Monday in January next after the election and qualification of a successor."
The appellee takes the position that the authority of the incumbent Governor with respect to the term of office for which his appointees to the vacant judgeships referred to above may be commissioned is controlled by Section 14 of revised Article V, Fla. Const., providing as follows:
"Vacancies in office of judge, how filled. When the office of any judge shall become vacant from any cause, the successor to fill such vacancy shall be appointed or elected only for the unexpired term of the judge whose death, resignation, retirement, or other cause created such vacancy."
In a well-reasoned opinion, the able chancellor whose decree is under review held that, if there is any real conflict between Section 6 of Article XVIII and Section 14 *868 of Article V, quoted above, the latter must control under the well settled rules of statutory and constitutional construction that the specific controls over the general, and the later expression of the Legislature or the people on a particular matter is controlling. He noted that revised Article V is a complete restatement of our organic law relating to the judiciary and, for this reason also, would take precedence over conflicting general provisions of the constitution. See Section 26, Article V. He was eminently correct in so holding.
The chancellor held also, however, that there is no real conflict between the constitutional provisions in question; that neither is a grant of tenure to the appointee; that, on the contrary, each is "a limitation upon the tenure of appointees"; and that "there is no reason why these sections may not co-exist, each applying in appropriate cases to terminate the tenure of those officers coming within the limitation imposed." I agree.
In State ex rel. Landis v. Taylor, 108 Fla. 541, 146 So. 549, this court was presented with a similar question upon closely analogous facts. There, the incumbent sheriff of Calhoun County, who was serving an unexpired term ending in January, 1933 and was also the Sheriff-elect for the term beginning in January, 1933, died in December, 1932. The incumbent Governor appointed and commissioned one L.T. Taylor to fill the vacancy; however, the commission issued to Taylor purported to run "until the qualification of his successor, who may be chosen at the ensuing general election", which would take place in November, 1934. Thereafter, the new Governor, after taking office in January, 1933 appointed and commissioned one R.L. Flanders as Sheriff of Calhoun County for the same term as that to which Taylor had been commissioned. In quo warranto proceedings questioning the authority of Taylor to hold the office after the appointment of Flanders by the new Governor, Taylor contended that the provisions of Section 6 of Article XVIII, supra, authorized the former Governor to commission him for the term specified in his commission so that he was lawfully authorized to hold the office until the expiration of such term. His contention was not sustained by this court and he was ousted from the office. In so doing, this court carefully delineated the area of applicability of Section 6 of Article XVIII, supra, as against that of Section 7 of Article IV, which latter constitutional provision applies generally to vacancies in office and authorizes the Governor "to fill such vacancy by granting a commission for the unexpired term." Cf. Section 14, Article V, supra, applicable specifically to vacancies in judgeships. The court said:
"Section 6, article 18, of the Constitution, is applicable where a vacancy in an elective office occurs when the remainder of the term in which the vacancy occurs extends beyond the next ensuing general election * * *.
"Section 7 of article 4 is applicable to a vacancy in an elective office where the vacancy occurs when the remainder of the term in which the vacancy happens does not extend to or beyond the next ensuing general election, * * *
"Section 6, article 18, of the Constitution contemplates appointments to fill vacancies in elective offices for terms that are current when the vacancies occur, and not to appointments to fill vacancies that have relation to terms not yet begun." (Emphasis supplied.)
I find nothing in the cases decided since the Taylor case, supra, 146 So. 549, in conflict with these concise statements respecting the applicability of the constitutional provisions there considered. These statements were, in fact, re-affirmed in State ex rel. Landis v. Bird, 1935, 120 Fla. 780, 163 So. 248, 253, 254, as follows:
"Vacancies in the elective offices * * * are filled by executive appointment until `the election and qualification of successors at the ensuing general *869 election,' (section 6, art. 18) or for the unexpired term if it comes before the next general election, (Section 7, art. 4). (Emphasis supplied.) * * *
"If the vacancy occurs between a general election and the end of the term of office, the executive appointment is to end of the term (section 7, art. 4); and if an elected officer dies before the commencement of the term to which he was elected, an executive appointment may be made at or after the beginning of the term to hold until the `election and qualification of a successor at the ensuing general election.' Section 6, art. 18; State ex rel. Landis v. Taylor, 108 Fla. 541, 146 So. 549." (Emphasis supplied).
There can be no doubt that the terms of office of the additional circuit judgeships created by the constitutional and legislative provisions referred to above must, under Sections 15 and 16 of Article V, fall into the established pattern of the six-year judicial cycle for circuit judgeships, so that the present term of the additional judgeships will end simultaneously with those now being served, to wit: on January 2, 1961, and a new term therefor will begin simultaneously with those now being served, to wit: on January 3, 1961. The trial judge so found, and I agree.
Accordingly, it must be held that the authority of the incumbent Governor to fill the vacancies in the additional circuit judgeships in question is controlled by Section 14 of Article V, and not by Section 6 of Article XVIII, and that the official term of office for which his appointees to fill such vacancies may be lawfully commissioned is for the unexpired terms ending January 2, 1961. That portion of the decree so holding should be affirmed.
And finally we come to that portion of the decree of the lower court in which that court said:
"On January 3, 1961, the first Tuesday after the first Monday in that month, the authority will vest in the office of governor, by whatever incumbent occupied, to appoint persons to fill such offices until the first Tuesday after the first Monday in January, 1963."
I find no error in this holding. In 1942 the Constitution was amended to provide for the election of circuit judges and created a cycle for all such judges beginning the first Tuesday after the first Monday in January, 1949, running for a period of six years. (See Section 46, Article V of the Constitution as it existed prior to the general revision of Article V in 1956.) Under Section 46 of the old Article V creating the cycles, the first would run from January, 1949 until January, 1955, and the second from January, 1955 until January, 1961. In Section 15 of Article V, as revised in 1956, the authors obviously took notice that all circuit judges were then holding office under commissions covering or involving cycle two under the old Article V and provided for an election in 1960 to fill the new cycle beginning in January, 1961, which may be here identified as number three since the 1942 amendment which started the terms in 1949. It is inescapable that all circuit judges in the State of Florida, both elected and appointed, are holding office in and as a part of cycle two as created by the amendment in 1942 and recognized by the revision in 1956. Therefore, a person becoming a circuit judge during the limits of cycle two would simply pick up at the point of qualification and his commission must expire at the end of that term at midnight January 2nd, 1961. On January 3, 1961, a new and third cycle would come into being, and since no persons were elected in the November election of 1960 to fill such offices they would be vacant and subject to being filled by appointment by whatever person would then occupy the office of Chief Executive.
In dealing with an analogous situation in 1896, in the case of State ex rel. Robert *870 v. Murphy, 32 Fla. 138, 13 So. 705, this court in a syllabus prepared by the court said:
"The fourteenth section of article 16 of the constitution of 1885, providing that all state, county, and municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified, is not a limitation upon the power of the governor to fill vacancies. Its purpose is to prevent an hiatus in government until the appointing power acts, and the appointee qualifies, wherever there is a vacancy, and an incumbent of a former term to hold over until such qualification."
This principle was restated in full by this court in an advisory opinion, 62 So. 363.
Again, in State ex rel. Hodges v. Amos, 101 Fla. 114, 133 So. 623, 624, this court, in an opinion prepared by Justice Whitfield, reaffirmed the doctrine announced in State ex rel. Robert v. Murphy, supra, and said:
"The provision of section 14, article 16, that an officer shall continue in office after the expiration of his official term until a successor is qualified, is intended to prevent a hiatus, State ex rel. [Robert] v. Murphy (In re Com'rs of Duval County), 32 Fla. 138, 161, 13 So. 705; In re Advisorv Opinion, 65 Fla. 434, 62 So. 363, 50 L.R.A.(N.S.) 365; 22 R.C.L. 550, and does not affect the cycle of the term fixed by law which ends at the expiration of the statutory term periodically whether the incumbent or another is the successor;"
Again in 13 Words and Phrases, page 623, under the heading Duly Qualified and citing State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248, the editors of that recognized work said:
"A statement that a referee had been `duly qualified' should be understood to mean that he had been duly sworn. Edwardson v. Garnhart, 56 Mo. 81, 86.
"`Duly qualified' within statute providing that deputy officer when duly qualified may perform all and singular duties of his principal means that deputy has taken oath required by statute. Gen.Code §§ 2, 9. State ex rel. Essinger v. Holzemer, 8 N.E.2d 155, 156, 54 Ohio App. 477.
"Where law is duly complied with in making executive appointments to fill offices, or to fill vacancies in office, and appointees comply with provisions of law regulating issue of commissions to officers, such executive appointees are `duly qualified' as successors to incumbents where there is no question duly prosecuted as to eligibility of appointees. Const. art. 16, § 14. State ex rel. Landis v. Bird, 163 So. 248, 120 Fla. 780.
"Circuit judge can be `duly qualified' under executive appointment without confirmation where authority to appoint is conferred by law, as where office is created and is vacant because it has never been filled, or where there is actual or prescribed statutory vacancy in office, or where executive appointment is specially authorized. Comp. Gen.Laws 1927, §§ 461-464; Const. art. 3, § 34; art. 4, § 7; art. 5, § 33; art. 16, § 14; art. 18, § 6. State ex rel. Landis v. Bird, 163 So. 248, 120 Fla. 780."
Involved is the question of whether or not a "vacancy" exists in a newly created office which has not theretofore been filled. This question has been answered in the affirmative by two generally accepted encyclopaedic treatments of the law:
67 C.J.S. Officers § 50 b. Newly Created Office, p. 210 provides:
"A newly created office is vacant on its creation where the act creating it does not otherwise provide.

*871 "A newly created office which is not filled by the legislative act creating it, and for which no provision is made by the act for filling it, becomes vacant on the instant of its creation, and remains so until it is filled by an incumbent;",
and cites as authority cases from Iowa, Louisiana, Missouri and Tennessee.
Vol. 42 Am.Jur. 978, Offices Newly Created, states:
"A vacancy may arise in an office newly created. The general rule governing the matter seems to be that when a law establishing an office takes effect a vacancy in the office at once exists, unless the language of the law imports futurity of selection, or unless other restrictions are imposed. Hence, the term `vacancy' applies to an existing office without an incumbent, although it has never been filled; for example, when a new county is created, the county offices, before they are filled, are considered as being technically vacant.",
citing cases from Pennsylvania, Texas, and annotations at 8 L.R.A. 228; 30 Am.St.Rep. 213.
I would hold that upon the creation of the new offices of circuit judges there simultaneously were created vacancies in office subject to be filled as provided in Section 14 of revised Article V of the constitution of Florida.
The Chancellor also dealt with other questions respecting the necessity of legislative action in the creation of the additional circuit judgeships, and the right of the appellee to seek declaratory relief in this matter. I find no error in his determination of these questions; and these portions of the decree should also be affirmed.
For the reasons stated, I would hold that the decision and judgment by the learned trial judge in the court below is without error and ought to be affirmed, and I therefore must dissent from a judgment of reversal.
NOTES
[1] 16 C.J.S. Constitutional Law § 25.