360 So.2d 417 (1978)
James H. WILLIAMS, As Secretary of Administration, State of Florida, and Robert L. Kennedy, Jr., As State Retirement Director, State of Florida, Appellants,
v.
Samuel S. SMITH, Appellee.
No. 52840.
Supreme Court of Florida.
June 9, 1978.
*418 Reubin O'D. Askew, Governor and Robert L. Shevin, Atty. Gen. of the State of Florida, and L. Keith Pafford and Stephen S. Mathues, Division Attys., Division of Retirement, Tallahassee, for appellants.
Joseph C. Jacobs and E.C. Deeno, Kitchen, of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellee.

ON PETITION FOR CLARIFICATION GRANTED
PER CURIAM.
On appellants' request for clarification of an opinion we rendered in this proceeding on April 4, 1978, and without objection from appellee, we withdraw the opinion first issued and adopt the following as the Court's opinion in this case.
This is a direct appeal from an order of the Circuit Court, Second Judicial Circuit, initially and directly construing a provision of the state constitution. We have jurisdiction by virtue of Article V, Section 3(b)(1), Florida Constitution.
Samuel S. Smith, appellee, became a circuit judge for the Third Judicial Circuit in January of 1961. He served in that office continually thereafter and until this Court suspended him from office on June 30, 1977. In re Inquiry Concerning a Judge, No. 77-19, 347 So.2d 1024 (Fla. 1977). He was a member of the Judicial Retirement System, Chapter 123, Florida Statutes (1975), from the date he assumed office until 1972. After the Judicial Retirement System was merged with the Florida Retirement System by Chapter 72-345, Laws of Florida, he became a member of the Florida Retirement System's Elected Officers' Class, effective December 1, 1972. He continued to participate in the system until his suspension from office. On the date of his suspension, there was pending an application by appellee for disability retirement benefits.[1]
On January 14, 1977, appellee was indicted by a federal grand jury for conspiracy to possess and distribute marijuana, a felony in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and for knowingly and intentionally unlawfully possessing, with intent to distribute, a quantity of marijuana, a felony in violation of 21 U.S.C. § 841 (a)(1) and 18 U.S.C. § 2. A jury verdict of guilty was returned on April 29, 1977, and appellee was adjudged guilty and sentenced to a term of years in prison by the presiding United States District Judge on June 3, 1977.
Alleging that they were in doubt as to their rights and official duties as to whether they could entertain Smith's application for disability benefits, the appellants filed a complaint for declaratory relief in the Circuit Court. The basis for appellants' uncertainty is Article II, Section 8(d), Florida Constitution, which provides:
"Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law."
After answer by appellee, the trial judge granted appellee's motion for summary judgment and held that Article II, Section 8(d), Florida Constitution, is not a self-executing provision of the Constitution and that in the absence of implementing legislation, it did not operate to invoke a forfeiture of Smith's rights and privileges under the retirement system. We agree.
We judicially know that under the leadership of Governor Reubin O'D. Askew, the people, acting pursuant to the provisions of Article XI, Section 3, Florida Constitution, proposed by petition that the 1968 Constitution be amended to include a section entitle "Ethics in government", which has become popularly known as the "Sunshine Amendment". The petition was filed with *419 the Secretary of State on July 20, 1976, and was adopted by the voters in the general election of November of 1976. It now appears as Article II, Section 8, Florida Constitution. The subsection for consideration sub judice is a part of the amendment.
In construing the Constitution, we first seek to ascertain the intent of the framers and voters, and to interpret the provision before us in the way that will best fulfill that intent. Gray v. Bryant, 125 So.2d 846, 852 (Fla. 1960).
Perhaps the most obvious expression of framers' intent was from the Governor who caused the amendment to be drafted and the petitions prepared. Following the climax of his successful effort to encourage the adoption of the amendment, and in his address to the joint session of the Legislature on April 5, 1977, Governor Askew said:
"You have received my proposals for implementing the sunshine amendment and making necessary changes in our election system.
"As we extend the sunshine amendment to other public officials and employees at every level of government, our goal should be to set meaningful and workable standards for financial disclosure and other requirements. I support the two-tier disclosure approach proposed by the Ethics Commission.
.....
"The Sunshine Amendment is a strong ethics provision, but our efforts cannot be regarded as complete with its passage. Because a constitution must be a statement of broad principle  capable of enduring and evolving with passage of time  the Sunshine Amendment was not intended to address every ethics issue. The amendment establishes a foundation and a framework on which we can add the specificity that statutes permit. (Emphasis supplied.)
"I am confident the Legislature will respect the expressed desires of the vast majority of Florida voters and move, in good faith, to further extend the Amendment. The Amendment leaves to the Legislature sufficient flexibility to carry out the will and intent of the voters. However, we in government cannot accept a retreat from this constitutional mandate.
.....
"I hope to work closely with Representative Sid Martin and the House Committee on Standards and Conduct, as well as with appropriate members of the Senate, in the development of this legislation.
"Another provision of the Sunshine Amendment that requires further implementation is the section prohibiting the appearance of certain elected officials before any board on which they served in the two years following their departure from the respective board. To the extent that law and the Constitution permit, we should consider extending a similar prohibition to other appointed and elected officials. I recommend that all elected officials be included who are not now covered by the Sunshine Amendment. I strongly urge the Legislature to adopt comprehensive legislation to ensure that public officers and high ranking state employees do not use their public service career, and contacts developed in that capacity, to later enrich themselves at the expense of the public. This would increase public confidence that matters coming before our agencies and boards are decided on their merits."[2]
On the same day, Speaker of the House Donald L. Tucker echoed the Governor's statement and acknowledged the legislative responsibility for implementation.[3] In both the regular and special sessions of 1977, the Legislature labored to develop the required implementing legislation. None of the proposals ever became law.[4] There could hardly *420 be a more specific record of the patent intent of the framers that the Legislature would act to implement the constitutional amendment and supply the needed specifics where required.
More importantly,[5] we arrive at precisely the same conclusion when we examine the words selected by the framers to present to the people.[6] The language of subsection 8(d) is plain and unambiguous, unmistakably evincing a need for implementing legislation. Had the framers intended that conviction of a felony involving a breach of public trust would work an automatic forfeiture of retirement and pension benefits, it would not have been difficult for them to express that intent. They would have said the conviction causes the forfeiture, not that the officer shall be "subject to forfeiture... ." Moreover, in recognition of the procedural problems, the definition of words used, and the determination of the extent of rights and privileges to be forfeited, they would have included those specifics within the subsection itself, or within a schedule as they did with respect to another subsection of the "Sunshine Amendment".[7] They did not follow that course. Instead, they clearly deferred forfeiture to "such manner as may be provided by law," leaving to the Legislature the task of implementing the mandate of the people.
In Gray v. Bryant, supra, the Court acknowledged the principle that the will of the people is paramount in determining whether a constitutional amendment is self-executing and directed that the language of the provision be examined to determine whether implementing legislation is necessary. The Court said:
"The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. State ex rel. City of Fulton v. Smith, 1946, 355 Mo. 27, 194 S.W.2d 302. If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing. City of Shawnee v. Williamson, Okl., 1959, 338 P.2d 355. The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing. People v. Carroll, 1958, 3 N.Y.2d 686, 171 N.Y.S.2d 812, 148 N.E.2d 875." Gray v. Bryant, 125 So.2d at 851.
Subjecting subsection (d) to such a test reinforces our earlier conclusion. The provision of the Constitution requires so much in the way of definition, delineation of time and procedural requirements, that the intent of the people cannot be carried out without the aid of legislative enactment.[8]
*421 We, therefore, conclude that in adopting Article II, Section 8(d), the people did not expect the forfeiture of public retirement benefits to be automatic from the date of its adoption, and that the Legislature was expected to enact implementing laws[9] to make it workable, to make it effective, and to carry out the intent expressed in the opening sentences of the "Sunshine Amendment" that:
"A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse... ."
The judgment of the Circuit Court is affirmed.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ADKINS, J., would deny the motion for clarification.
NOTES
[1] The application is dated February 15, 1977 and specifies that Judge Smith's disability was caused by high blood pressure and angina disease.
[2] Fla. H. Jour. 17, 21, 22 (1977).
[3] Fla. H. Jour. 12 (1977).
[4] See the journals of both the Senate and the House of Representatives for the regular and special sessions of 1977 for the content and disposition of the proposals that were introduced and considered by the Legislature.
[5] In analyzing a constitutional amendment adopted by initiative rather than by legislative or constitution revision commission vote, the intent of the framers should be accorded less significance than the intent of the voters as evidenced by materials they had available as a predicate for their collective decision. An absence of debate and recorded discussion marks the development of an initiative proposal. To accord the same weight to evidences of the intent of an amendment's framer as is given to debates and dialogue surrounding a proposal adopted from diverse sources would allow one person's private documents to shape constitutional policy as persuasively as the public's perception of the proposal. This we cannot permit.
[6] We are not here concerned with any subsection of the Sunshine Amendment other than subsection 8(d). The variety of language in the several subsections of the "Sunshine Amendment" makes it unwise to conjecture whether some, all or none of the other provisions are self-executing.
[7] See Art. II, § 8(a), Fla. Const.
[8] The specific needs are numerous. A cursory examination discloses:

a) There is a need for a definition of "a felony involving a breach of public trust."
b) In what forum must the conviction take place? Would, for example, a conviction by a Court of Impeachment be sufficient to work the forfeiture?
c) The status is unclear of forfeited rights in any situation in which a conviction is reversed on appeal or a pardon granted. The provision subjects the officer to forfeiture upon conviction, but does the filing of an appeal stay the forfeiture?
d) There are many questions as to what rights are subject to forfeiture. At the bar of this Court, attorneys for appellants gave us their interpretation and indicated that even money which the appellee had earned as salary and deposited with the state after the payment of income taxes on it should be forfeited along with interest on such money and all other rights. Without implementing legislation, such an interpretation is possible.
e) The provision recognizes that a procedure for accomplishing the forfeiture is necessary. Will there be a judicial or administrative procedure? Where, when and in what form will the determination of questions be recorded?
[9] The legislators are sworn to uphold the Florida Constitution and are presumed to act in a lawful manner. The mandate of the people to act in this area is clear and forceful. Any suggestion that the people are in fear that the legislators will attempt to frustrate their will is inappropriate on its face. Had such a fear existed, the framers would have drafted a totally self-executing amendment.