The Honorable Jeb Bush Governor of Florida The Capitol Tallahassee, Florida 32399-0001
Dear Governor Bush:
You ask the following question:
Does the amendment to Article VI, section 1, Florida Constitution, proposed by the Constitutional Revision Commission and approved by the electorate during the November 1998 general election, which provides that ballot access requirements for independent and minor party candidates cannot be greater than requirements for candidates of the party with the greatest number of registered voters, require implementing legislation?
In sum:
The amendment to Article VI, section 1, Florida Constitution, proposed by the Constitutional Revision Commission and approved by the electorate during the November 1998 general election, which provides that ballot access requirements for independent and minor party candidates cannot be greater than requirements for candidates of the party with the greatest number of registered voters, is self-executing and does not require implementing legislation in order to be effective.
The Governor in Executive Order 99-01, dated January 8, 1999, has called four special elections to fill vacancies in the state Legislature. In light of the recent amendment to Article VI, section 1, Florida Constitution, providing for ballot access by independent and minor party candidates and the unlikelihood that the Legislature will adopt legislation regarding ballot access prior to the special elections, questions have been raised as to the effect of this constitutional amendment on the special elections.
In determining whether a constitutional amendment, such as the recent amendment to Article VI, section 1, Florida Constitution, is self-executing, the Supreme Court of Florida in Gray v. Bryant
has developed the following test:
"The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. . . . If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing. . . . The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing."[1]
The language used in the constitutional provision itself is the principal criterion to be considered in determining this issue.[2]
For example, if the language of the Constitution is directed to the Legislature, or if it appears from the language used and the circumstances of its adoption that subsequent legislation was contemplated to carry it into effect, such a provision would not be self-executing.[3]
The will of the people, however, is paramount in determining whether a constitutional provision is self-executing.[4] As stated by the Supreme Court of Florida in Gray v. Bryant,[5]
"[T]he modern doctrine favors the presumption that constitutional provisions are intended to be self-operating. This is so because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people."
Revision 11, proposed by the Constitutional Revision Commission, contained several amendments to the constitutional provisions relating to elections. One amendment revised the language of Article VI, section 1, Florida Constitution, by adding the following underscored language:
"SECTION 1. Regulation of elections. — All elections by the people shall be by direct and secret vote. General elections shall be determined by a plurality of votes cast. Registration and elections shall, and political party functions may, be regulated by law; however, the requirements for a candidate with no partyaffiliation or for a candidate of a minor party for placement ofthe candidate's name on the ballot shall be no greater than therequirements for a candidate of the party having the largestnumber of registered voters."
Revision 11 was approved by the electorate at the November 3, 1998 general election and became effective January 5, 1999.[6]
As noted above, it is presumed that constitutional amendments are self-executing, the rationale being that the Legislature could otherwise defeat the will of the people. The language of the amendment itself plainly states that ballot access requirements for independent and minor party candidates cannot exceed those imposed on the candidates of the major party having the largest number of registered voters. Nothing in the record of the Constitutional Revision Commission's deliberations indicates an intent to delay implementation of this constitutional amendment by requiring legislative action.
Requirements are currently in place for major party candidates as well as for independent and minor party candidates. The requirements for major party candidates, however, under the constitutional amendment, clearly establish the benchmark for independent and minor party candidate ballot access. As the Supreme Court of Florida recognized in Williams v. Smith,[7] the fact that the right granted by the amendment may be supplemented by legislation does not, of itself, prevent the amendment from being self-executing.
Thus, the Constitution now prohibits requirements for independent and minor party candidates being greater than those imposed on candidates of the party with the greatest number of registered voters. Requirements for such candidates exist; to the extent that the requirements for independent or minor party candidates are more stringent, they must fall.
For example, the statutes currently permit major party candidates to be placed on the ballot by payment of a qualifying fee or by petition.[8] Independent and minor party candidates, however, must petition and upon obtaining the required signatures, must pay the qualifying fee or file a written certification that payment of the fee constitutes an undue burden on their resources.[9] Applying the prohibition contained in the amendment, independent and minor party candidates would now have the option of being placed on the ballot by payment of a qualifying fee or by petition.
The number of signatures required for placement on the ballot also differs for major party candidates and independent and minor party candidates.[10] The requirements imposed on the latter are greater than those for major party candidates. Thus, the less restrictive requirements for candidates of the major party with the greatest number of registered voters would now also apply to independent and minor party candidates. Thus, independent or minor party candidates seeking to qualify by obtaining signatures would be required in a special election to fill a vacancy to obtain twenty-five percent of three percent of the registered voters of the major political party with the greatest number of registered voters in the geographic jurisdiction represented by the office sought.
The qualifying fees currently imposed by statute on independent and minor party candidates would continue since such fees are no greater than those imposed on candidates of the major party having the greatest number of registered voters. The amendment does not affect the qualification of candidates of major parties who would continue to qualify under the current statutory scheme.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjwls
[1] 125 So.2d 846, 851 (Fla. 1960). See also, Schreiner v.McKenzie Tank Lines Risk Management Services, Inc.,408 So.2d 711 (Fla. 1st DCA 1982), approved and adopted, 432 So.2d 567
(Fla. 1983); Op. Att'y Gen. Fla. 77-136 (1977).
[2] See generally, 16 C.J.S. Constitutional Law s. 46.
[3] Id. Cf., Plante v. Smathers, 372 So.2d 933 (Fla. 1979); andWilliams v. Smith, 360 So.2d 417 (Fla. 1978). And see, Op. Att'y Gen. Fla. 91-08 (1991), in which this office concluded that the three-day waiting period for the purchase of handguns was not self-executing since the constitutional provision itself required the Legislature to enact legislation implementing the provision.
[4] Gray v. Bryant, supra; Schreiner v. McKenzie Tank Lines Risk Management Services, Inc., supra.
[5] 125 So.2d at 851.
[6] According to the Division of Elections, Department of State, 2,239,607 electors voted yes on Revision 11 (64.1% of the vote) while 1,253,150 voted no (35.9% of the vote). See, 1998 Primary, Runoff and General Election Results, Constitutional Amendments, Department of State, Elections Online, at http://election.dos. state.fl.us/General98/. And see, Art. XI, s. 5(c), Fla. Const., providing:
"If the proposed amendment or revision is approved by vote of the electors, it shall be effective as an amendment to or revision of the constitution of the state on the first Tuesday after the first Monday in January following the election, or on such other date as may be specified in the amendment or revision."
[7] 360 So.2d 417, 420 (Fla. 1978), quoting, Gray v. Bryant,supra.
[8] A major party candidate must pay a qualifying fee equal to six percent of the annual salary of the office sought or obtain the signatures of three percent of the registered voters of thepolitical party in which the candidate seeks nomination who are registered in the geographical jurisdiction represented by the office being sought. See, ss. 99.061, 99.092 and 99.095, Fla. Stat. For major party candidates seeking to qualify by the alternate method (by obtaining signatures) in a special election to fill a vacancy, twenty-five percent of the signatures required by section 99.095, Fla. Stat., must be obtained. See, s.100.111(3)(c)1., Fla. Stat.
[9] An independent candidate must petition to be placed on the ballot. Such petition must contain the signatures of three percent of the total number of registered voters of the geographicjurisdiction represented by the office. In addition, such candidate must pay a filing fee and election assessment equal to four percent of the annual salary of the office being sought unless such fees are waived by the filing of an undue burden certificate. See, ss. 99.061, 99.092 and 99.0955, Fla. Stat. For independent candidates seeking to qualify in a special election to fill a vacancy, twenty-five percent of the signatures required by section 99.0955, Fla. Stat., must be obtained. See, s.100.111(3)(c)2., Fla. Stat.
Minor parties may have the names of their candidates placed on the ballot if signatures are obtained from three percent of the total number of registered voters of the geographical jurisdiction of the office being sought. Minor party candidates are required to pay the filing fee and election assessment equal to four percent of the annual salary of the office being sought and, if required by the party, a two percent party assessment unless these fees are waived by the filing of an undue burden certificate. See, ss.99.061, 99.092 and 99.096, Fla. Stat. For minor party candidates seeking to qualify in a special election to fill a vacancy, twenty-five percent of the signatures required by section 99.096, Fla. Stat., must be obtained. See, s. 100.111(3)(c)3., Fla. Stat.
[10] See, n. 8 and 9, supra, regarding the number of signatures required for major party candidates and for independent and minor party candidates, respectively.